THE BROOKLYN CENTRAL AND JAMAICA RAIL ROAD COM-
PANY *vs.* THE BROOKLYN CITY RAIL ROAD COMPANY.

A horse rail road, laid down in the streets of a city and conducted in the usual
manner, is not an additional easement or burden imposed upon the land,
which will entitle the owner of the soil to compensation in damages.

When the rails of a rail road company are laid down in a public street, they
may be lawfully crossed and passed over by the cars of another company,
whenever such passing over can be effected without interfering with or im-
peding the progress of the cars passing along the track thus crossed.

The crossing of the track of a rail road company by the rails and cars of
another rail road company is not an appropriation of the property of the
former company for the use of the latter, but a mode of exercising the
public right of travel over the highway.

The mere crossing of the track of one city rail road company, by the horse
or mule cars of another railway company, is not such a clear and manifest
invasion of the rights of private property as to entitle the aggrieved party
to a preliminary injunction.

APPEAL from an order made at a special term, denying a
motion for a preliminary injunction.

*J. W. Gilbert,* for the plaintiff.

*G. T. Jenks,* for the defendant.

*By the Court,* BROWN, J. The justice who heard the
motion for an injunction in this action, at the special term,
determined that crossing the railway of the plaintiff by the
rails and horse cars of the defendant, was not an appropri-
ation of the property of the former to the use of the latter,
but a mode of exercising the public right of passage and
travel over the highway known as Atlantic street when such
rail was laid down. From this judgment we cannot dissent,
for we ought not, upon a motion for a preliminary injunction,
to affirm what has not yet been authoritatively affirmed in any
court—that the mere crossing of the railway track of one
city rail road company by the horse or mule cars of another
railway company, is such a clear and manifest invasion of

Brooklyn Central and Jamaica R. R. Co. v. Brooklyn City R. R. Co.

the rights of private property as to entitle the complainant to a preliminary injunction. The .franchise of the plaintiff is not put in controversy. No one disputes it. It consists in the right to lay down and maintain upon the surface of Atlantic street in the city of Brooklyn a railway, and to operate cars thereon, subject to the ordinary uses of the street for passage and travel. No one, however, claims that the plaintiff possesses the right to exclude others from a similar use of the street, or that the legislature may not in the exercise of its power grant a similar franchise to another individual or company, provided that it be so exercised and enjoyed as not to impede or obstruct the cars and vehicles of the plaintiff in their transit over their track. The question is not who has the prior right, or who is bound to give way and wait at the point of intersection, but rather whether there is any authority to cross the track of the plaintiff in a single carriage at a time, drawn by horses upon iron rails laid even with the surface of the street, at right angles or nearly so with the plaintiff's track. Such a use of a public street has never yet been held to be an additional servitude. The reasoning and remarks of one of the judges in *Davis* v. *The Mayor &c. of New York* (14 *N. Y. R.* 506) tend to that conclusion, because the feature which he says most widely distinguishes a rail road from ordinary highways and streets, is that the former is a strict monopoly, entirely excluding all idea of competition; although he also says that when the rail road carriages are not moved by the power of steam, but by horses, the tracks, when they do not rise above the street level, may be safely crossed, and to a limited extent may be used for passing lengthwise. Another of the judges took an opposite view, saying "that it by no means follows that a rail road track may not exist in a public highway in a city open to the public use as a street improvement, under such regulations as the municipal government charged with the superintendence and control of the street may see fit to prescribe. The idea of a corporate franchise, or of a monopoly

existing in favor of individuals or associations of individuals has no necessary connection with a rail road. Rail roads are physical improvements, and may or may not possess the characteristics of a monopoly or franchise according to the conditions under which they are built and used. If they simply constitute a feature of the public highway and are open to public use, then it is extremely plain that they are not liable to objections of that character." It is manifest there was no unanimity in the minds of the judges, upon the point under consideration, and the case was determined upon other grounds. In the case of *Williams* v. *The New York Central Rail Road Co.* (16 *N. Y. R.* 97,) it was held that the appropriation of Washington street in the city of Syracuse to the uses of the defendants' rail road imposed an additional servitude upon the land dedicated for a street, and entitled the owner of the soil to compensation. That the dedication of the land to the use of the public as a highway was not a dedication to the use of a rail road company, and that the two were essentially different. This case must be considered, like every other, in connection with the facts out of which it arose. The trains of the defendant were driven by the force of steam at a high rate of speed, passed and repassed over the street every half hour, and numbering something like forty each day. This amounted to an exclusive appropriation of the street to the uses of the company. Its use by the public must have been extremely limited, if not wholly interrupted, and its effect could not be otherwise than to impair and greatly to depreciate the value of the property upon both sides of the street. And thus the land given for the street, and which, freed from the railway, would have formed a convenient access to the adjoining lands and greatly enhanced their value, was converted into a means of injury and positive destruction. There is no similarity between that case and the one now under consideration, and it is no authority for the position that a horse rail road laid down in the streets of a city and conducted in the usual

manner, is an additional easement or burden imposed upon the land, which will entitle the owner of the soil to compensation in damages.

If what I have said be true, the grant of a franchise to the Jamaica Rail Road Company to lay down and operate a rail road through Atlantic street, cannot operate to exclude all other companies operating horse cars from crossing the street. That street was still to remain a public highway for public travel and public uses, and so long as the rail road company were not impeded or interrupted in running its cars and operating the road, it could not complain. The Jamaica company are not, and never were, the owners of the soil. Their rights were those of passage—a mere easement, and if the laying down of the rails of another company in the same street and the running of horse cars thereon, should be deemed and held to be another easement, how could the Jamaica company complain, so long as its right of passage over the street remained uninterrupted. Atlantic street commences at the shore of the bay and extends easterly, so that the route of the Jamaica company separates the city into two parts, one lying north and the other south of the track. The theory of the plaintiff is that no other railway laid down upon the surface of the street, and no other vehicle running upon such track and drawn by horses, can cross its track without its permission. So that all other city rail roads must limit their routes and operations to the districts north or south of Atlantic street. The same railway shall not extend itself from one to the other, because it cannot do so without crossing the track of the Jamaica road. If we look at another side of this controversy we shall see that the grant to the city rail road company, both by the resolutions of the common council and the act of the 23d March, 1854, is to construct and operate a railway upon routes some of which run north and south over streets and avenues which intersect and cross Atlantic street. If the claim of the plaintiff can prevail, wherever the city company reach the track of the plaintiff, their routes termi-

nate. Its cars may reach Atlantic street from the north by Furman street, and from the south by Columbia street, but there is to be no crossing, no communication ; for here, according to the theory of the plaintiff, notwithstanding the express terms of the grant, the routes come to an end. No use is proposed to be made of the Jamaica company's rails. The passage of its cars is not to be interrupted or impeded, and no injury is to be done to its business. But upon some imaginary right of property at the point of intersection, and which it is thought the defendant will appropriate in crossing, the passage of its cars over the street is to be arrested, and its routes of travel wholly interrupted. It was doubtless the intention of the legislature that both these grants should have effect. That the franchise should become valuable and profitable to the grantees and beneficial to the public at large. There is no other way in which they can have this effect and produce the desired result but by determining that when the rails of a rail road company are laid down in a public street, they may be lawfully crossed and passed over by the cars of another company, whenever such passing over can be effected without interfering with or impeding the progress of the cars passing along the track thus crossed. In short, to hold as the judge at the special term held upon the motion for the injunction in this action, " that the crossing of the plaintiff's track by the rails and cars of the defendants, is not an appropriation of the property of the former to the use of the latter, but a mode of exercising the public right of transit over the highway."

The order of the special term should be affirmed, with ten dollars costs.

[KINGS GENERAL TERM, February 11, 1861. *Emott, Brown* and *Scrugham,* Justices.]