CRAIG *vs.* THE ROCHESTER CITY and BRIGHTON RAIL ROAD COMPANY.

The appropriation of a highway, by a rail road company which enters upon and occupies such highway with the track of its road, is the imposition of an additional burden upon, and a taking of the property of, the owner of the fee, within the meaning of the constitutional provision which forbids such taking without compensation; and the company can derive no title under acts of the legislature and the license of municipal authorities, without the consent of the owner of the fee, or the appraisal and payment of his damages in the mode provided by law.

There is no distinction in this respect, between rail roads operated by steam, and those upon which animals, only, are used as a motive power.

MOTION to dissolve an injunction restraining the defendant from laying down the track of its rail road in a street of the city of Rochester, opposite the plaintiff's premises ; no consent from the plaintiff, who was the owner of the fee to the centre of the street, having been obtained, or damages appraised and paid. The defendant was duly incorporated under the general rail road act, to construct a horse rail road from the city of Rochester to the village of Brighton, and had obtained a license from the municipal authorities of Rochester to lay its rails on certain streets of that city, of which the street in question was one.

*T. R. Strong,* for the plaintiff.

*W. F. Cogswell,* for the defendant.

JOHNSON, J. In the case of *Williams* v. *The New York Central Rail Road Co.,* (16 *N. Y. Rep.* 97,) it was held that an appropriation of a highway by a rail road company, is the imposition of an additional burthen upon, and the taking of the property of the owner of the fee, within the meaning of the constitutional provision which forbids such taking without compensation ; and that the company can derive no title by any act of the legislature, or of any municipal authority,

Craig *v.* Rochester City and Brighton Rail Road Co.

without the consent of the owner of the fee, or the appraisal and payment of his damages in the mode prescribed by law. The same principle was again asserted in *Carpenter* v. *Oswego and Syracuse Rail Road Co.,* (24 *N. Y. Rep.* 655,) and also in *Mahon* v. *New York Central Rail Road Co., (Id.* 658.) In the latter case, Clerke, J. who delivered the opinion of the court, says, "an easement for the purpose of a highway does not authorize, as against the proprietors of the soil, the laying down of a railroad upon the track of the highway. The use of the land for a rail road is totally different from that public right of passage for which highways were designed." And still more recently, it is understood the same court, in a case yet unreported, has emphatically reaffirmed the same doctrine. This must now be regarded as the settled law of this state, no other court having the power to overrule, or the right to disregard, the decisions of the court of appeals.

These decisions settle and determine most conclusively the questions presented in this case, the important one being whether the defendant can use and occupy the soil of the street for its rail road without the consent of the owner or owners of the fee, or the appraisal and payment of damages to such owners, If any thing can be regarded as settled by judicial determination, this, with us at least, is no longer an open question.

It is claimed, however, in behalf of the defendant, that inasmuch as the cars on the defendant's road are to be moved by animal, instead of mechanical power, upon the railway, the decisions above referred to do not apply to this case, and several decisions of this court are cited which do hold that the appropriation of a street or highway, by a rail road company, so far as is necessary for the purpose of laying down and maintaining its track thereon, upon which its vehicles are to be moved by animal power, is not a taking of the property of the owners of the fee, within the meaning of the constitutional provision requiring compensation to be

made. There are several cases of this kind, in this court, it must be admitted, distinctly asserting this doctrine. But so far as they are contrary to the decisions of the court of appeals they are of no force or authority whatever, and are not to be followed. This corporation was formed under the general rail road law, and of course has no power, rights, or privileges, superior to other corporations, created under the same law. It can take under its charter and franchise, precisely what other corporations created in like manner can take, without making compensation, or without the consent of the owner, and nothing more.

Nothing can be clearer than that the burthen which the court of appeals has declared to be an addition to that of an easement of a highway, and a taking of private property, within the meaning of the provision of the constitution before referred to, does not consist in the particular force by which the carriage is drawn along the street. Every one must see that simply propelling the carriage along the street, whether by horses or mules, or steam, or any other mechanical contrivance, would be simply exercising the right of passage over the highway, and no other or different right. But the new and additional servitude or burthen, which constitutes the taking or appropriation, consists principally, if not entirely, in the use and occupation of the soil of the street, in laying down and maintaining thereon the permanent structure upon which alone the principal business of the corporation is to be carried on, as the cases unmistakably show. This is a permanent and exclusive right and occupancy, which no other corporation or person can enjoy in common with the defendant, without its permission.

I am aware of the interpretation put by BROWN, J. in the case of *The Brooklyn Central and Jamaica Rail Road Co.* v. *The Brooklyn City Rail Road Co.,* (33 *Barb.* 420,) upon the decision in the case of *Williams* v. *The New York Central Rail Road Company,* above cited. But it is only necessary to refer to the opinion in that case, to show that

the learned justice has entirely misconceived the grounds on which the decision must have been rested by the other judges. In the case now before us, it is true, all persons having occasion to use the street, or streets, in which the defendant's track is to be laid may, under the restrictions imposed upon this corporation by the municipal authority of the city, travel upon the track of the road, the same as upon other parts of the street, but not in the same manner, and for the same purpose for which it is to be used by the corporation. To a certain extent, and in very material particulars, the right to the use of the track, for the purposes of passage merely, is in the company exclusively, and not common alike to all. It may be granted that the right of the defendant to the use of its track within the bounds of the city, is considerably less exclusive than it may be beyond those boundaries, where no special restrictions have been placed upon it, beyond those imposed by the statute. But the difference is one of degree merely, and in no respect fundamental.

The provisions of the constitution must apply to the rights and the immunities of this corporation in respect to taking private property, alike in Rochester and in Brighton. In either town, so far as the principle of this case is concerned, the sole question is, does the corporation take private property, or to any extent burden it, beyond the servitude of the easement of the highway.

This question, as has been seen, has been repeatedly answered by the court of last resort, and is no longer matter for controversy. Until that court shall see fit to reverse its numerous decisions upon this question, the defendant, before it can lay down and use its track in the street, must either obtain the consent of the owner of the fee in such street, over which the track is laid, or have the damages appraised, and payment made, as prescribed by statute. I have come to this conclusion after a careful consideration of all the authorities bearing upon the subject, and not without regret on account of the sacrifice of individual interests and public convenience,

which it may occasion.  But the rule of law, when once ascer-
-tained, must be upheld and enforced by all courts, whatever
the detriment to the interests of individuals or to the ease
and convenience of the public.  I shall not attempt to go
over the several cases decided in this court, in the first and
second judicial districts, to which we have been referred by
the defendant's counsel, for the purpose of pointing out the
erroneous character of the decisions, or of showing their
entire inapplicability to the case before us.  I rest the de-
cision in this case entirely upon those of the court of appeals,
which cannot, as I conceive, without manifest perversion, be
distinguished, in any essential particular, from the present
case.  It may be that in the city of New York where the
fee of all the streets is claimed and held to be in the city, the
consent of the city authorities to the laying down and main-
taining a rail road in the streets, is to be regarded as the con-
sent of the owner of the fee, as held by my brother WELLES, in
the case of *The People* v. *Kerr*, (37 *Barb.* 357.)  But the
conclusion of SUTHERLAND, J., in the same case, that the
cases of *The Trustees of the Presbyterian Church in Waterloo*
v. *The Auburn and Rochester Rail Road Co.*, (3 *Hill*, 567,)
and *Williams* v. *The New York Central Rail Road Co.*,
(*supra*,) "should be considered as having been decided on
the theory that the acts of the legislature authorizing the
construction of the roads required these companies to acquire
title to the soil of the highway and to compensate the owner
therefor," is without any foundation whatever, as will plainly
appear from an examination of those cases.  But, even if it
were so, it would not aid the defendant here, because the act
under which it has its being has the same requirement in
regard to compensation.

I have reason to know, however, that in the latter case,
(*Williams* v. *The New York Central Rail Road Co.*,) the
court of appeals, when the case was first argued, was divided
and unable to come to a decision on the very question which
lies at the foundation of this, and all kindred cases, to wit;

Craig *v.* Rochester City and Brighton Rail Road Co.

Whether using a public street by a rail road company for the track of its road, was taking private property for public use within the meaning of the constitution, or whether it was but a mere mode of using and enjoying the public easement, without any essential extension or enlargement of such ease- ment, or encroachment upon the remaining rights of the source of the fee. Upon a re-argument before the same court, composed in part of other judges, the case was decided unani- mously adversely to my views, and obviously, as appears from the reported case, upon the same questions on which the court had been previously divided. That decision settled and determined the questions before controverted, and this de- fendant, as well as others, must submit to its authority.

Since writing the foregoing opinion, I have been favored with a manuscript copy of the opinion of the court of ap- peals, delivered by Smith, justice, in the recent case, above referred to, of *Wager* v. *The Troy Union Rail Road Co.,* in which not only are the former decisions reaffirmed, but the distinction sought to be made between rail roads oper- ated by steam or horse power, is declared to be without foundation, so far as the constitutional prohibition against taking private property without compensation is concerned.

The motion must therefore be denied, with costs.

JAMES C. SMITH, J. The ground on which the defendant claims the right, with the assent of the city council, to con- struct its proposed rail road upon the land of the plaintiff covered by the public street, without making compensation to the plaintiff, and without his consent, is clearly stated by the defendant's counsel in these words: "The building and using of a horse rail road in the streets of a city, without the consent of the owner of the soil over which the streets are laid, is merely a mode of exercising the public right of travel, and therefore is not an appropriation of the property of the owner of the land requiring compensation."

I am of the opinion that this position is unsound, and that

it is not only unsupported by any adjudication binding upon this court, but that it conflicts with the decisions of the courts of this state in the following cases : (*The Trustees of the Presbyterian Society in Waterloo* v. *The Auburn and Rochester R. R. Co.,* 3 *Hill,* 567 ; *Davis and others* v. *The Mayor &c. of New York and others,* 14 *N. Y. Rep.* 506 ; *Williams* v. *The New York Central R. R. Co.,* 16 *id.* 97 ; *Mahon* v. *The Utica and Schenectady R. R. Co.,* 1 *Lal. Sup.* 156 ; *Mahon* v. *The New York Central R. R. Co.,* 24 *N. Y. Rep.* 658 ; *Carpenter* v. *The Oswego and Syracuse R. R. Co., Id.* 655 ; *and Wager* v. *The Troy Union R. R. Co., decided by the court of appeals in December,* 1862, *and not yet reported.*) These cases establish, beyond all question, the broad doctrine that the appropriation of a highway by a rail road company which enters upon and occupies such highway with the track of its road; is the imposition of an additional burden upon, and a taking of the property of the owner of the fee, within the meaning of the constitutional provision which forbids such taking without compensation ; and that the company can derive no title under acts of the legislature and the license of municipal authorities, without the consent of the owner of the fee, or the appraisal and payment of his damages in the mode provided by law.

It is claimed, however, on the part of the defendants, that the cases above cited relate exclusively to rail roads operated by steam, and have no application to rail roads upon which horses only are used as a motive power; and this claim presents the precise question to be determined in this case. In support of it, the defendant insists that there is an essential difference in the nature of the two classes of roads, not merely in respect to the motive power employed upon them, but also as to their mode of construction ; the steam road being so built as that it is impracticable to drive a vehicle along or upon its track, while, as is asserted, the track of a horse rail road is not only so laid that the public can use it with ordinary vehicles, but the law secures to the public the right to

such use.  In my judgment, the distinctions adverted to present no substantial difference between the two classes of roads in respect to the questions in litigation; and both classes are within the principle of the cases above cited.·

The case of *Davis* v. *The Mayor &c. of New York*, (*supra*,) decided in December, 1856, related to a rail road of the same class as that which the defendant in this case proposes to construct.  It was to be built in Broadway, and the resolution of the common council under which authority was claimed to construct it, expressly provided that no motive power except horses should be used below Fifty-Ninth street. Denio, J. who delivered the leading opinion, came to the conclusion that the establishment of such a road is not within the jurisdiction conferred upon the corporation of New York over the roads and streets in that city, although their juris- diction over that subject is necessarily very large.  In giving his reasons, he adverted to two essential points of difference between a highway and a rail road, one of which is that the object of a highway is to afford to every citizen an opportu- nity to pass on foot or with his horses and carriages from one locality to another; but a rail road does not facilitate and generally does not admit of those modes of passage.  He remarked, in commenting upon this point, that "when the rail road carriages are not moved by the power of steam, but by horses, the tracks, where they do not rise above the street level, may be safely crossed, and to a limited extent may be used for passing lengthwise.  This is, however, only identi- cal, and not a necessary feature of a rail road."  The other point of difference adverted to by him is, that it is essential to the legal idea of a highway that it shall be common to all ; but a rail road is a strict monopoly, entirely excluding all idea of competition.  It is obvious that these forcible con- siderations apply with equal pertinency to both classes of rail roads, and were so intended by Judge ·Denio ; and it is to be remarked that, although three of his associates dif- fered from him in some respects, neither of them claimed

that in regard to the power of the city corporation to author-ize the construction of a rail road in the streets of the city, there is any distinction between a rail road upon which animals only are used as a motive power and one operated by steam.

In *Williams* v. *The New York Central Rail Road Co.*, (*supra*,) decided a few months after the case of *Davis* v. *The Mayor*, the reasoning of Selden, J. who delivered the leading opinion, applied as well to one class of roads as the other. While he expressly concedes that if the only differ-ence between the ordinary use of a highway and the use of it as a rail road consisted in the introduction of a new motive power, it would not be material (*p.* 108) he asserts—and the position is vital to his argument—that there is a material distinction "between the common right of every man to use upon the road a conveyance of his own at will, and the right of a corporation to use its conveyances to the exclusion of all others."

In addition to the points of difference between a highway and a rail road above adverted to, others were suggested on the argument before us which I think are entitled to con-sideration.

A right of way, whether public or private, is a mere *ease-ment*, and as such, being incorporeal, it does not include a right to an exclusive and permanent occupation of the soil; but the construction and use of a rail road track upon the land of another is an occupation of the soil, both permanent and exclusive. Thus ejectment will not lie against one who exercises only an easement in land as a highway, (*Child* v. *Chappell*, 5 *Seld.* 246,) yet it has been held that against a rail road corporation laying down its track and rails in a public street, ejectment will lie by the owner of the fee sub-ject to the easement, although the track has not been used. (*Carpenter* v. *Oswego and Syracuse Rail Road Co.*, (*supra*.) This distinction is not theoretical merely. It results from the ruling in the case last cited, that the laying down of the

track and rails of a rail road corporation in a public street is of itself such a possession as would, if continued for twenty years adversely to the owner of the soil, vest in the corporation a *fee*, and not a mere right of way or easement, by prescription. In this respect the construction and operating of a rail road upon the land of another, accompanied by a claim of title, is an act of the same character as the building and occupying of a house under similar circumstances. It is an assertion of the right of *remaining* upon the soil, and not merely of passing over it. · Again, a right of way may be acquired by prescription or dedication ; but it seems that a right to use land for the purpose of a rail road cannot be so acquired. (*Cortelyou* v. *Van Brundt*, 2 *John.* 357. *Pearsall* v. *Post*, 20 *Wend.* 111. *S. C. in error*, 22 *id.* 425.)

Now, in respect to the mode or character of the occupation of the soil, which so essentially distinguishes a rail road from a highway, and which, in the case of a rail road constructed in a highway, is a wrong to the owner of the fee, the two classes of rail roads are precisely alike, and the differences between them, relied upon by the defendant, pertain only to the use of the structure.

But independently of the considerations already presented, it seems to me impossible to avoid the conclusion that the building and using of a rail road in the streets of a populous city, as proposed by the defendant, instead of being a mode of exercising the public right of travel, is an infringement of the right and an obstruction to its use. As is said by Judge Denio, in *Davis* v. *The Mayor*, (*supra*,) "we may be allowed, without the testimony of witnesses, to know enough of the method of operating rail roads to say that their carriages are quite unlike the vehicles used on other roads. They are necessarily large machines, occupying the space which would be required for several carriages of any other kind, and containing passengers enough to fill a great many of the carriages used on other streets or roads." They are so constructed that they cannot run on an ordinary highway,

and are, therefore, confined to the rails, and thus they cannot turn out at pleasure, nor avoid other carriages stopping on the street to take up or set down passengers or freight, or for other necessary and lawful purposes.   Although ordinary carriages can run in the groove made by the railroad company, provided their axles are of the proper length and their tires are not too wide, they must in all circumstances yield the way to the cars of the rail road company, in order to avoid collision, and the latter must necessarily be exempted from the law of the road in respect to turning out, to which all other carriages are subject.   (*Hegan* v. *The Eighth Avenue Rail Road Co.,* 15 *N. Y. Rep.* 380.)   It has consequently been held that if an individual sees fit to run his carriage or wagon upon the rails of a city rail road company, he is bound to exercise more care and diligence to avoid collision than if he was not upon the track, and to see that an approaching car is not impeded; and if through his negligence in this respect a collision ensues, he shall not have damages against the company, even though the servants of the latter are also in fault.   (*Wilbrand* v. *The Eighth Avenue Rail Road Co.,* 3 *Bosw.* 314.)   This ruling seems reasonable and even indispensable if rail roads are to be permitted in public streets, but it obviously concedes to the company a right to the use of that portion of the highway covered by their track which is at all times superior to the right of other travelers, and which wholly excludes them therefrom, if the business of the company is so large as to require the constant use of their track.   I cannot assent to the proposition that such use of the highway is a mode of exercising the public right of travel.

Unquestionably the obstruction to the highway in the case of a rail road constructed as the defendant proposes to construct its road, and upon which horses are used as the only motive power, is much less than in the case of a rail road operated by steam; but the difference is only in degree.

The defendant is not aided by the cases which it cites relating to turnpike and plank road companies.   (*Benedict* v. *Goit*,

3 *Barb. S. C. R.* 459. *Commonwealth* v. *Wilkinson,* 16 *Pick.* 175, *and remarks of Denio, J. in Davis* v. *The Mayor,* 14 *N. Y. Rep.* 516.) Those cases stand upon the ground that turnpikes and plank roads are public highways, as every citizen has the right to travel on them in his own mode of conveyance ; that the imposition of tolls is a method of keeping them in repair ; and that in respect to plank roads no importance should be attached to the circumstance that planks are used for the road bed, as the intent of the statute authorizing them is simply to provide a road constructed of some hard and durable material.

I have not discovered an adjudication of the precise question before us in any of the cases in this state, to which we have been referred. In neither of them, do I understand, was the litigation between a rail road company and the owner of the soil covered by the street. *The Brooklyn City Rail Road cases,* (33 *Barb.* 420 ; 35 *id.* 364,) were between two companies, and the principle to be deduced from them is that each company, as against the other, must be considered as exercising a public use, subject to the imposition by the public of any additional use consistent therewith. (*See* 24 *N. Y. Rep.* 345.) The opinions expressed respecting the rights of private owners of the soil, who were not parties nor in any way interested, have not the force of authority. In *Mason* v. *The Brooklyn City and Newtown Rail Road Co.,* (35 *Barb.* 374,) it does not appear that the defendants had appropriated the plaintiff's land, or that he owned the fee of the street. The ground of his action was that the proposed railway would be specially injurious to him as an owner of adjacent property. The case should therefore be classed with *Fletcher* v. *The Auburn and Syracuse Rail Road Co.,* (25 *Wend.* 464,) and *Chapman* v. *The Albany and Schenectady Rail Road Co.,* (10 *Barb.* 360,) the distinction between which and cases like the one at bar is pointed out by Selden, J. in *Williams' case,* 16 *N. Y. Rep.* 104.) *The People* v. *Kerr* (37 *Barb.* 857) was decided,

Craig *v.* Rochester City and Brighton Rail Road Co.

so far as the private plaintiffs were concerned, upon the ground that they had no property whatever in the streets, the fee being held to be in the corporation of the city of New York. But if these cases could be regarded as deciding the very-question now under consideration, we should be obliged to disregard them, as being in conflict with the decisions of the court of appeals.

Even if the question before us were an open one, its decision could not be legitimately affected by the suggestion that the proposed railway will be, in some respects, a public convenience. The question is one of strict legal right, and our province is to declare the law, not to make it. No amount of public advantage will justify an unwarrantable encroachment upon private property, however inconsiderable it may be. If the property of the plaintiff is needed for public use, it may be taken for such use, even without his consent, on compensation being made, but on that condition only; and if, as is claimed, it is of little value, the compensation required will of course be but slight.

I am of the opinion that the motion to vacate the injunction order should be denied, with ten dollars costs to the plaintiff.

WELLES, P. J. concurred.

Motion denied.

[MONROE GENERAL TERM, March 2, 1863. *Welles, Johnson* and *J. C. Smith,* Justices.]