GRAND RAPIDS & INDIANA R. R. Co. v. MARY HEISEL.

*Railroad in the Public Street—Damages to Abutting Owner not Owning Soil in the Street.*

A street railway track may be lawfully authorized in a city street without compensating adjacent owners. But a railroad cannot.

Where a railroad has been built in a city street without compensating such abutting owners as own the soil of the street, these owners have a right of action for any consequent injury to their freehold, such as injury to its market and rental value, and annoyances to business or family occupation.

The general principles on which to assess the damages resulting to a freehold from the operation of a railroad on the adjacent highway, are the same as if no highway had previously existed; and its existence would only be a circumstance tending to diminish the recovery.

An abutting owner who does not own the soil in the street cannot recover for any injury to his freehold resulting from the presence of a railroad track in the street, but only for such damages as he can prove arising from such misconduct of the company as constitutes a nuisance, such as leaving cars standing for an unreasonable time in front of his premises, unnecessary noises, and running trains at unwarrantable speed. In so far as the proper operation of the road diminishes the value of his estate it is *damnum absque injuria* and such decrease in value cannot be an element in the computation of his damages.

That which is permitted by competent authority is not a nuisance.

A deed of land lying east of a certain street and explicitly described as bounded by the east line of the street conveys no title to the soil in the street.

Error to Kent. Submitted October 19, 1877. Decided January 9, 1878.

. TRESPASS ON THE CASE. The facts are in the opinion.

*Hughes, O'Brien & Smiley* (on brief) for plaintiff in error. Whether a railroad in a public street is a nuisance or not depends upon its construction and use, *Clark v. Ice Co.*, 24 Mich., 509; *Hamilton v. N. Y. & H. R. R. Co.*, 9 Paige, 171; *Drake v. Hudson River R.*

*R. Co.*, 7 Barb., 508; *Plant v. Long Island R. Co.*, 10 Barb., 26; *Hentz v. Long Island R. R. Co.*, 13 Barb., 646; *Milhau v. Sharp*, 15 Barb., 193; *Williams v. N. Y. Cent. R. R. Co.*, 16 N. Y., 97; *Davis v. Mayor*, 14 N. Y., 506; *Witmore v. Story*, 22 Barb., 414; *Black v. P. & R. R. R. Co.*, 58 Penn. St., 249; and one who does not own soil in the street can only recover for special damages for the improper operation of the road, *Gould v. H. R. R. R. Co.*, 6 N. Y., 522; *Whittier v. P. & K. R. R. Co.*, 38 Me., 26.

*Thompson & Pratt* (on brief) for defendant in error. The presumption that an adjacent proprietor owns to the middle of the street is not rebutted by the fact that his title-deed bounds his property by the line of the street (*Moody v. Palmer*, 50 Cal., 31; *Champlin v. Pendleton*, 13 Conn., 23; *Purkiss v. Benson*, 28 Mich., 538; *Peck v. Smith*, 1 Conn., 103; *Bissell v. N. Y. Cent. Ry. Co.*, 23 N. Y., 61; *Paul v. Carver*, 26 Penn., 223) nor by showing a qualified fee in the county (*Kimball v. Kenosha*, 4 Wis., 321), but in any case he would have a substantial interest in the soil as appurtenant to the land and would have a right of action for an injury to it, *Haynes v. Thomas*, 1 Ind., 38; *Tate v. O. & M. R. R. Co.*, id., 479; *Schulte v. N. P. T. Co.*, 50 Cal., 592; *Lackland v. N. M. Ry.*, 31 Mo., 180. Railroad tracks in the street are a public nuisance, *Springfield v. C. R. Ry.*, 4 Cush., 71; *Com. v. N. & L. Ry.*, 2 Gray, 56; *Com. v. O., C. & F. Ry.*, 14 Gray, 93; *Com. v. V. & M. Ry.*, 4 Gray, 22; *Railway Co. v. Smith*, 49 Me., 9. As to the rule of damages, see *Troy v. Cheshire R. R. Co.*, 23 N. H., 83; *Ill. Cent. R. R. Co. v. Grabill*, 50 Ill., 241; *Railway Co. v. Capps*, 67 Ill., 607; *Del. & R. Ry. Co. v. Wright*, 1 Zab., 469; *Hatfield v. Cent. Ry.*, 33 N. J., 251; *Stone v. Bumpus*, 40 Cal., 428; *Hopkins v. Railroad*, 50 Cal., 191; *Davis v. Railroad*, 12 Wis., 16; *Sherman v. M. L. S. & W. Ry. Co.*, 40 Wis., 645.

COOLEY, J. Mrs. Heisel sued the railroad company in

case, for an injury suffered by her as owner of a lot situated on West Division, formerly Seward street, in the city of. Grand Rapids.    The injury complained of was one resulting from an occupation of the street in front of plaintiff's premises by the main track of the railroad, and also by a side-track upon which cars were often left standing.    Plaintiff occupied the lot as a homestead, and special damages were claimed not only for the inconvenience of access to the lot caused by the running and keeping of cars in the street, but also for the discomfort occasioned by the smoke, dust, noise, etc., from the engines and carriages.    Mrs. Heisel bought the land in 1868, after the railroad track had been laid in the street, but before the side track had been put in.    The description in her conveyance was as follows:

" The following described piece or parcel of land lying and being situate in the city of Grand Rapids, Kent county, and State of Michigan, to-wit: Commencing at a point where the continuation of the north line of Second street of Scribner and Turner's addition to the city of Grand Rapids would intersect the east line of Seward street, thence running north on the line of said Seward street one hundred feet, thence east parallel to said line of Second street one hundred feet, thence south parallel to the line of Seward street one hundred feet to the north line of said Second street, thence west along the line of Second street one hundred feet to the place of beginning."

Upon the trial the plaintiff gave evidence tending to show that she was specially incommoded by the running of the cars in the street, and particularly by cars being left standing on the side track; that the smoke, noise, smells, etc., made the neighborhood unhealthy and unpleasant; that her own health received injury therefrom; and that the market value of her premises was greatly decreased in consequence of the use of the street by the railroad company.    The defendants gave evidence of a permission which had been granted to them by the city to lay their tracks in the street, and it is not questioned here that that permission was lawfully given, but a question arises upon it which will be considered further on. The defendants also claimed that the plaintiff had no

title to the lands embraced within the limits of the street, but the circuit judge held that whether she had or not was immaterial.    He also instructed the jury in respect to damages as follows:

"The plaintiff claims that by reason of the injury she has lost certain rental of the lot' which had a house on it as claimed; and, second, it is claimed that the plaintiff has been injured in health, and has been annoyed by the running of trains and standing of cattle cars on the side-track, for which trouble and annoyance she claims to recover some damages; and, third, the decreased value of the premises by reason of the road and side-track are claimed as damages.    In my judgment the plaintiff may recover upon all three of these claims for damages, provided that you find as a fact that such damages have been actually sustained by the plaintiff."

One question which it becomes necessary to notice in the case relates to the permission which was given by the city authorities for the occupation of the street with railroad tracks.    Under the general railroad law now in force a railroad company with such permission is not allowed to construct their road in a public street until "damages and compensation be made" to the adjoining owners (General Railroad law, 1 Sess. L., 1873, p. 505; Act 198, Art. II., Sec. 9, subd. 5).    The track of the company was laid in the street in 1868, before the plaintiff became owner of her lot.    No formal permission for the occupation of the street was given by the city authorities until 1873, which was after the plaintiff had purchased and gone into occupation.    No compensation has been made by defendant to the adjoining owners, but as no statute made such compensation a condition precedent to the occupancy of the street, at the time it began, and as the city then imposed no conditions, I cannot see how that fact can make the occupation which was tacitly permitted illegal. Nevertheless the right of the plaintiff to recover compensation in some form, if she was ever entitled to any, is not affected by what has taken place: if she has rights in the street which are property rights, or if as respects the enjoyment of her lot she suffers any

38 MICH.—9.

deprivation of right through the occupation of the street by the railroad company, she is, I think, entitled to recover compensation by suit, to the same extent that she would have been entitled to demand it had she been owner before the track was laid and demanded it in advance. Her right, however, must be tested by common law rules; the statute does not undertake to prescribe for what the adjoining owners shall be compensated, nor, as we understand it, to enlarge their common law rights.

What rights the adjoining owner has in the public streets is then the question; and I cannot resist the conclusion that the circuit judge was in error when he instructed the jury that it is immaterial in this controversy whether the plaintiff's ownership extended to the center of the street or was restricted to the limits actually included in the boundaries given in her deed: in other words, that it is immaterial whether the railroad company has actually appropriated her land, or has only interfered with her enjoyment of the public easement.

It is, to my mind at least, doubtful whether it is competent for the public authorities to bind the interests of individuals by any consent they may give to the occupation for railroad purposes of a public highway, when the land over which the highway is laid is owned by private parties. If the railroad were only a city railway constituting a mere local convenience, and calculated to relieve the pressure of traffic and travel upon the street, the question of course would be different. There are cases which hold it to be competent under proper legislative authority, to permit a street railway track to be laid, regardless of the consent or of the wishes of abutting proprietors who may own the soil of the street. A street railway for local purposes, so far from constituting a new burden, is supposed to be permitted because it constitutes a relief to the street; it is in furtherance of the purpose for which the street is established, and relieves the pressure of local business and local travel instead of constituting an embarrass-

ment.    It is for this reason that the owners of lands
over which a city street is laid are denied compensation
if a street railway is subsequently authorized within it:
if they were compensated for the taking of their land
originally, they are supposed to be compensated for all
possible losses they may suffer from its being put to
proper uses as an avenue of local trade and passage,
and if without compensation they dedicated it to the
public, they are supposed to have contemplated and
assented to all such uses.    They have therefore no ground
for complaint when the new convenience is brought into
use; and I apprehend one would not be permitted to
show that in his particular case the street railway was
an injury rather than a benefit.    It is enough that the
use of the street for a city railway is a proper use, and
therefore a lawful use; being such, it can give rights of
action to no one.    Such appear to be the conclusions
of the courts: *Brooklyn City etc. R. R. Co. v. Coney Island
etc. R. R. Co.*, 35 Barb., 364; *Brooklyn Central etc. R.
R. Co. v. Brooklyn City etc. R. R. Co.*, 33 Barb., 420;
*People v. Kerr*, 27 N. Y., 188; *New Albany & Salem R.
R. Co. v. O'Daily*, 12 Ind., 551; *Brown v. Duplessis*, 14
La. Ann., 842; *Elliott v. Fair Haven etc. R. R. Co.*, 32
Conn., 579; *Hobart v. Milwaukee City R. R. Co.*, 27
Wis., 194.

But we cannot say the same in the case of the ordi-
nary railroad.    It is not usual for such a road to be
laid in one of the public highways, and the cases in
which it is permitted are exceptional.    For that reason,
therefore, if for no other, the owner whose land is taken
for a highway, whether in town or country, cannot be
understood to have assented to its being appropriated,
either wholly or in part to railway purposes at the dis-
cretion of the public authorities, and to have been com-
pensated for such appropriation.    Neither can the use of
the highway for the ordinary railway be in furtherance
of the purpose for which the highway is established, and

a relief to the local business and travel upon it: the two uses, on the other hand, come seriously in conflict; the railroad constitutes a perpetual embarrassment to the ordinary use, which is greater or less in proportion to the business that is done upon it and the frequency of trains. When, therefore, the country highway or the city street is taken for the purposes of a railroad company engaged in the business of transporting persons and property between distant points, the owner of the soil in the highway is entitled to compensation, because a new burden has been imposed upon his estate, which affects him differently from the original easement, and may be specially injurious. "The right of way, the road bed and the carriages propelled thereon are owned by private individuals, and not by the public. Fares are charged for travel thereon for the exclusive benefit of the parties owning the road. They are constructed and equipped in the interest of private speculation, but at the same time they are intended to subserve the public good. The travel on them bears no analogy to our notions of travel on an ordinary street or highway, where every one travels at pleasure in his own conveyance, without paying tolls or fares. The uses are totally different and even inconsistent." *Indianapolis etc. R. R. Co. v. Hartley*, 67 Ill., 439, 444, per Scott, J., following and repeating to some extent Shaw, Ch. J., in *Springfield v. Conn. R. R. R. Co.*, 4 Cush., 63; to the same effect see *Cox v. Louisville etc. R. R. Co.*, 48 Ind., 178, 189, per Downey, J. The following cases sustain and illustrate the same view: *Presbyterian Society v. Auburn etc. R. R. Co.*, 3 Hill, 567; *Williams v. New York Central R. R. Co.*, 16 N. Y., 97; *Wager v. Troy etc. R. R. Co.*, 25 N. Y., 526; *Nicholson v. N. Y. & N. H. R. R. Co.*, 22 Conn., 83; *Imlay v. Union Branch R. R. Co.*, 26 Conn., 249; *Mahon v. N. Y. Central R. R. Co.*, 24 N. Y., 658; *Haynes v. Thomas*, 7 Ind., 39; *Tate v. O. & M. R. R. Co.*, id., 480; *Kimball v. Kenosha*, 4 Wis., 321; *Ford v. Chicago etc. R. R. Co.*, 14 Wis., 609;

*Pomeroy v. Milwaukee etc. R. R. Co.*, 16 Wis., 640; *Hegar v. Chicago etc. R. W. Co.*, 26 Wis., 624; *Sherman v. Milwaukee etc. R. R. Co.*, 40 Wis., 645.

In such a case it cannot be questioned that the laying of the railroad track in the highway without first legally appropriating the land for the purpose, and without making compensation, is a legal wrong to the adjacent owner: the track as to him is wrongfully laid: and whether he proceeds to have compensation assessed in the manner provided by law when lands are appropriated under the right of eminent domain,—if provision is made that meets the case—or brings a common law action, he is entitled to recover such damages as he can show he has suffered by reason of the appropriation. And in such a case his injury is not confined to the inconvenience he is put to in making use of the public easement: but as the railroad wrongfully encumbers his freehold, he may recover for any injury the encumbrance causes. The decrease in rental value and in the market value of his lot are legitimate items of damage in such a case; and so are the annoyances to business or to family occupation which the operations of the railroad company may cause. *Mix v. Lafayette etc. R. R. Co.*, 67 Ill., 319. Indeed the general principles on which damages would be assessed in such a case would be the same that they would have been had no highway previously existed, and the existence of the highway would only be a circumstance tending to diminish the recovery.

But other principles must be applied when the abutting owner is not the owner of the soil in the street. In that case his freehold is not appropriated, and the mere laying of the track in the street—in the absence of any statute giving him redress therefor—is no wrong to him whatever. He is not wronged until the use of a street becomes a nuisance to him, or specially incommodes him in the enjoyment of the public easement. He is entitled to no assessment of damages, because none of his land is

taken, and he has no action at the common law unless upon such grounds as would enable one land proprietor to sue an adjoining proprietor for failing to observe the maxim that every one must so use his own property as not unreasonably to incommode his neighbor. The damage establishes the wrong, and must be shown in every case.

An adjoining proprietor can never be entitled to recover from a railroad company for the depreciation in the rental or sale value of his premises, because of the location of the track in the street, except upon the assumption that the location is of itself unlawful. As already stated, it is unlawful as to him if he owns the soil in the street; but if he does not, and the placing of the track there is permitted by competent authority, the incidental injuries he may suffer from the location of the track and from the proper and reasonable conduct of the business of the railroad company upon it can afford no ground of action unless the statute gives one. In that particular he is on the same footing with all the rest of the community; he may have the incidental benefits without compensation, and he must submit to the incidental losses without redress. The railroad is not a public nuisance, and no right of action can arise against the company until by negligence or improper management they do or suffer to be done something injurious to the abutting proprietor which the permission to occupy the street would not justify. The general principle here stated has been recognized in the following cases: *Moses v. Pittsburg etc. R. R. Co.*, 21 Ill., 516; *Murphy v. Chicago*, 29 Ill., 279; *Stetson v. Chicago etc. R. R. Co.*, 75 Ill., 74; *Chicago etc. R. R. Co. v. McGinnis*, 79 Ill., 269; *Elizabethtown etc. R. R. Co. v. Combs*, 10 Bush, 382; *Carson v. Central R. R. Co.*, 35 Cal., 325; *Porter v. North Missouri R. R. Co.*, 33 Mo., 128. It is a legal solecism to call that a public nuisance which is permitted to competent authority; *Harris v. Thompson*, 9 Barb., 350; *Danville etc. R. R. Co. v. Commonwealth*, 73 Penn. St., 29, and cases cited.

The nuisance, whether it be public or private, must be found in the subsequent misconduct of the railroad company, and not in their acceptance of the permission to occupy the highway.

But every lot owner has "a peculiar interest in the adjacent street which neither the local nor the general public can pretend to claim; a private right in the nature of an incorporeal hereditament legally attached to his contiguous ground; an incidental title to certain facilities and franchises," which is in the nature of property, and which can no more be appropriated against his will than any tangible property of which he may be owner. *Lexington etc. R. R. Co. v. Applegate,* 8 Dana, 294; *Elizabethtown etc. R. R. Co. v. Combs,* 10 Bush., 382; *Haynes v. Thomas,* 7 Ind., 38; *Protzman v. Indianapolis etc. R. R. Co.,* 9 Ind., 467; *Stone v. Fairbury etc. R. R. Co.,* 68 Ill., 394. A railroad company with its track in the street may injure the lot owners by ways innumerable: by acts of omission and of commission; and some such acts are charged against the defendant in this case. To leave its cars standing in front of the plaintiff's premises for an unreasonable time is a plain violation of her rights; and so might be unnecessary noises, and the running of trains at an unwarrantable speed. As the principles which would govern the case are the same which must be applied in the case of nuisances in general, it is quite unnecessary to attempt any catalogue of acts which might constitute legal grievances: the attempt could be but imperfectly carried out because of the impossibility of anticipating all the ways in which one person may unlawfully annoy another. But in no action grounded upon such an injury could the diminution in the value of the plaintiff's estate constitute a measure of damages. The reason is obvious. In so far as that diminution has been occasioned by the placing of the track in the street, it is *damnum absque injuria;* and in so far as it comes from an abuse of railroad privileges in the street, it cannot be regarded as permanent

in its nature, because it cannot be assumed that the abuses will be permanent. The defendant may indeed repeat them, notwithstanding a recovery for wrongs already done; but the repetition only gives rise to a new cause of action; in advance it cannot be assumed as matter of legal certainty that it will take place. It is clear therefore, that the principles governing the recovery must be quite different when the plaintiff's freehold is appropriated and when it is not.

I am inclined to the opinion that a correct interpretation of the plaintiff's deed must confine the land granted within the boundaries given and exclude the street altogether. The general rule which carries a grant bounded on a highway to the center line thereof is familiar and is not questioned; but the terms of this grant appear to indicate an intent that the general rule shall not apply. In *Smith v. Slocomb*, 9 Gray, 36, a very similar description, beginning and terminating in one of the side lines of a highway was held not to embrace any part of the land over which the highway was laid. Like decisions were made in *Sibley v. Holden*, 10 Pick., 249, and *Phillips v. Bowers*, 7 Gray, 21; *Hughes v. Providence etc. R. R. Co.*, 2 R. I., 508; *Hoboken Land Co. v. Kerrigan*, 31 N. J. Law, 13; *Anderson v. James*, 4 Robert., (N. Y.), 35. In *Morrow v. Willard*, 30 Vt., 118, 120, it is said that "if the deed bounds the grantee on a highway, and there is nothing in the deed which can control the general boundary, it carries the grantee to the center of the highway; such being its legal construction. If, however, the boundary had been the north line of the highway, the construction would have been otherwise." Similar language is used in *Moody v. Palmer*, 50 Cal., 31. In *Starr v. Child*, 5 Denio, 599, a like rule was applied to a conveyance of land bounded on the bank of a stream, and this decision is followed in *Halsey v. McCormick*, 13 N. Y., 296. And see *Nickerson v. Crawford*, 16 Me., 245; *Rockwell v. Baldwin*, 53 Ill., 19. In the very important

case of *Howard v. Ingersoll*, 13 How., 381, a like view is taken of a boundary on a stream.

I do not consider it important in this case to examine into the nature of the fee which is to be vested in the county when under our statute the proprietor of lands lays out a town plat. That subject has been considered somewhat in *Wayne County v. Miller*, 31 Mich., 447, and *Paul v. Detroit*, 32 Mich., 108, but is unimportant to this case, *first*, because no platting is shown, and *second*, because, as I think, the terms of the plaintiff's deed exclude the highway.

I think the judgment should be reversed, with costs, and a new trial ordered.

CAMPBELL, C. J., and GRAVES, J., concurred. MARSTON, J., did not sit in this case.