Haynes, J. (orally).
These cases have been heard together and will be decided together. The cases are both actions for an injunction *665 against the defendant company. The petitions were filed on the 2nd day of July, 1891, and in each the plaintiffs aver that they are incorporated companies organized for the purpose of building and operating street railways in certain streets of the city of Toledo — being in different streets, of course.
The Metropolitan Street Railway' Company avers, among other things, that it is allowed to run a line of street railroad along St. Clair street, crossing Monroe street and extending on further south; while the Central Street Railway Company has a line of street railroad that runs along Superior street down to Monroe street out to Erie Street, and then along Erie street. The Metropolitan street Railway Company avers that at the crossing of Monroe street they have intersected the line of railroad that runs along that street, and have been to the expense of assisting in putting in certain crossings there, of which they own one-half, and that the cost of the whole structure is $2,500, or nearly that sum.
It avers that the defendant company is about to enter upon the line of its railroad at Monroe street, and crossing its track there to use that crossing without having first in any form or manner obtained the consent of the plaintiff company or appropriated the right to so pass along the street as against the plaintiff company; it prays an injunction to restrain the defendant from doing so until it shall have appropriated the right or otherwise obtained the consent of the plaintiff company.
In the other case, the plaintiff company, the Central Street Railway Company, avers that it is the part owner of a line of street railroad across and along Monroe street, from Superior street to Erie street- — -a double track; that its interest is one-third,I think it says, of the whole of the tracks, and that, in like manner, the defendant company is about to, or threatents to, enter upon said street railroad in Monroe street, without the consent of the plaintiff company and *666 without appropriating the right of way; and it also prays for an injunction to restrain defendant from so doing until it obtains the consent of the company, or otherwise legally obtain the right to pass over the track.
The Electric Street Railway Company has filed numerous answers as the case grew and developed, and it avers that the Toledo Consolidated Street Railway Company — -which it avers is an incorporated company — has obtained the right to operate street railways through a large number of streets' in the city, viz: the 'Monroe & Dorr Street Railroad Company, the Monroe Street Railroad Company, and the Toledo Street Railroad Company; that it also purchased all the stock of the Metropolitan Street Railway Company and all the stock of the Central Street Railway Company, and that the officers of the Consolidated Street Railway Company became, after January, 1891, the same as the officers of the Metropolitan and the Central Street Railway Companies, and claims that the Consolidated Street Railway Company has possession of these tracks along Monroe street, and is using them and has the income and profits from them, and is to keep them in repair, and has kept them in repair, and rebuilt them to a certain extent. Defendant further claims that prior to the second day of July they had commenced appropriation proceedings under the statutes of Ohio, against the Consolidated Street Railway Company, for the purpose of obtaining the joint use with it of the line of street railway running along between these points upon Monroe street, and that such proceedings were had that a verdict was rendered in that case, and that within two or three days — -perhaps on the third of July- — the right would accrue to the Toledo Electric Street Railway Company to have that verdict confirmed, and it would then be authorized to make payment of the amount which had been awarded and take possession of the road; and defendant claims that it has the right, under that appropriation pro *667 ceeding, to the use of this track, and the whole of it, without any regard to the alleged rights of these two plaintiffs, and they deny, in fact, that these companies have any rights in the road of any value whatever.
It appears by the testimony that the Toledo Consolidated Street Railway Company was composed of several companies, and, among others, the Monroe Street Railroad Company, and the Monroe & Dorr Street Railroad Company, and ■obtained the right to exercise the franchises of a railway company in Toledo. And it appears that prior to this timp— in 1889 — the Consolidated Company had executed a mortgage, for the purpose of borrowing money; that that mortgage was executed in conjunction with this Metropolitan Street Railroad Company and the Central Street Railroad Company. It was recited in that mortgage that the Consolidated Street Railway Company intended to buy the street railways belonging to those two companies, and such por■ceedings were had that the money borrowed under this mortgage was appropriated, among other things, to improving those two companies’ lines, including these tracks along Monroe street. It appears that during the time that this suit was pending for the appropriation — during the early part of 1891 — terminating, say, the first of July, 1891— that the crossing in question, at St. Clair and Monroe streets, had been placed there by the agent of the Consolidated 'Company, and consisted not only of the frogs at the actual crossing of the two tracks, but also of some curves which were to be used in passing from the Metropolitan line upon St. Clair street to the line on Monroe street. It is said by the Toledo Electric Street Railway Company that those curves were never used, nor claimed by it; that it claims no right to use them in any manner or form, and that so far as the controversy is in regard to them, they disclaim any Tights to use them; so that the controversy between the plaintiff companies and the defendant company, in that case, is limited to the actual crossing at the point in Monroe street.
*668 In regard to the Central Road,, it seems that some time about the year 1881, or 1882, there had been an agreement entered into between the Monroe Street and the Dorr Street Railroad Companies, and the Central Passenger Street Railroad Company — the latter company being the predecessor of the Central Street Railway Company — a mortgage having been foreclosed, so that the Central Street Railway Company became the successor to it. Under this agreement between those companies the tracks on Monroe street were to some extent rebuilt, and to be paid for in a certain manner. The Monroe & Dorr Street Railroad Company and the Monroe Street Railroad Company were “to furnish the present tracks on Monroe street from said Superior street to Erie street, and the iron for two additional rails between said streets with spikes to spike said rails to the stringers. The Central Passenger Company to furnish the rest of the material necessary for said double track (of eight rails) from the straight track of the Superior street switch to the point on Erie street where said Central Passenger Company’s track leaves the said double tracks, and the said Central Passenger Company is to superintend and perform all ,the work necessary to lay said double tracks as aforesaid from said Superior street switch to said point of departure on Erie street, and repave the street from said point of departure of the Central Passenger Company’s tracks on Erie street. The said Monroe and Dorr, and Monroe Street Companies to furnish all the material for a six rail double track,and the said Central Passenger Company to perform all the work of putting it in up to the straight tracks of the Ontario street switch,and relay the pavement. ”
Now, the tracks prior to that time, as we understand it, consisted of two tracks, with six rails, three in each track; and that had been necessitated because they were being jointly used by street railways that ran cars of different gauges. The outside rail of each track was used in common by all o them, and then a rail was put in about three feet *669 from that for the use of the Central Company, then another three feet six inches away for the Monroe Street Company; and then another four feet and eight inches away for the use of the Monroe and Dorr Street Company. And in this way they were being used up to the time that the Consolidated had come into existence, and after that the Consolidated made large improvements in Monroe street, and so adjusted the rails as to accommodate them to the line of the Consolidated cars, making them of uniform four feet eight inch gauge. The result of that was, and the material part of it is, that the original track of the Central Street Railway Company in Monroe street was thus taken up by the Consolidated Company, and whatever new rails were put in were put in by the Consolidated Company by, and with ■the proceeds of this money arising ■ form this mortgage, which I have already referred to. That is substantially the condition of affairs as I understand it.
At the time of the appropriation proceedings the Metropolitan Street Railway Company was not made a party to those proceedings, and neither was the Central Street Railway Company. Those corporations had been in existence for some time, but their tracks and the working of them, as I have already said, was in the possession of the Consolidated Srteet Railway Company. It is claimed by the plaintiff that soon after the commencement of the proceeding — at least soon after the commencement of the trial before the probate court — the fact was stated that the Metropolitan Street Railway Company claimed rights there, and the Central also, so that it came to the knowledge of the Toledo .Electric Street Railway Company, which was appropriating the road, early in the proceedings before the probate court. It is said by the Electric Company, that it could not ascertain who the officers were of those railway companies, and for that reason it did not take any steps to make them parties to the suit; but, whatever the reason was, the fact re *670 mains that the plaintiffs here were not made parties,nor were any attempts made to make them parties, although knowledge of the existence of those companies was shown in the’ mind of the president of the Electric Company from facts that arose upon the trial.
It is further claimed upon the part of defendant that the officers of the Consolidated Company, being the same persons as those of the other companies, and those officers being in court defending the appropriation proceedings, that they had full knowledge of the fact that the appropriation proceedings were going forward for the appropriating of the use of those tracks to the use of the Electric Company. That is true, practically, and it is sought to raise some question of estoppel in regard to the matter. We are unable to concur with counsel for the Electric Company that there is an estoppel. There is not, simply and purely, any estoppel in this case. It certainly would have been very proper to have made these corporations parties to that suit, and defendant ought to have made some pretty earnest endeavors to have brought them into the suit.
But the real question which has been pressed upon our attention by counsel, and the real question which we have discussed and passed upon, is whether the plaintiff companies have any such real and abiding interest at the present time in the tracks upon Monroe street as to give them a right or standing' in this court, to have this court award them an injunction to restrain the Electric Company from using these tracks until they shall have appropriated the right of way or interest which is owned or held by them.
We have examined the authorities which have been cited by counsel upon either side of the case, especially the case of Railway v. Railway, 30 Ohio St. 604, which seems to define the rights of railway companies at crossings — at least so far as steam railroads go, and, of course, that has a large bearing upon the case at bar.
*671 It seems to us that so far as the actual possession of these tracks is concerned, and so far as the actual use of them is concerned, they are to-day in the hands of the Consolidated Company — they are there with the consent of these two plaintiff companies. It is true that the corporations themselves are kept alive, I suppose for the purpose of preserving their franchise. They proceed annually to the election of officers, and that is about the end of what they do. They allow, by a verbal arrangement, the Consolidated to use those tracks; they have never made any formal lease or sale, as it is said in this mortgage that they expected and intended to do, but practically, and to all intents and purposes, the Consolidated Company is the holder of the road, at least it has a large interest in it, its owners own the stock of these companies, and it is allowed to use the roads, and have all the income of them; and the only thing that may be said is, that these companies may choose to resume the running of the roads themselves and to stop the Consolidated from the use of them. Well, that is not liable to occur, of course, until a sale is made of at least a majority of the stock now held by the officers of the Consolidated. These roads are practically held for the benefit of the Consolidated, and kept alive for the purpose of enabling it to use those tracks.
In regard to the Central Road: these single tracks on the line of the road have been, as we understand it, practically -taken up by the Consolidated Company; there may be some portions of them remaining, but they are not used to-day; the tracks that are in use there have been laid with the money that was provided in this mortgage, borrowed by the Consolidated Company- — -with the consent of the Metropolitan Company, and of the Central Company- — and used by it in replacing those tracks, and it seems to us that the natural and just conclusion is, that the Consolidated Company is practically the owner of those tracks at the present time; and that the interest that remains in the plaintiff is very small.
*672 We understand, of course, that in making the appropriation under the decision of the Supreme Court of the state, defendant simply appropriated personal property — I mean the use of the rails and tracks. In a case of that kind, the franchises are not appropriated — -the right to be and exist as a corporation, is not appropriated.
In regard to the Metropolitan Road, it is said by the defendant company that the law is different in regard to street railways from what it is in regard to steam railway companies, and, to a certain extent, that seems to be true. Cases are cited here bearing upon that claim, among them is one from California, where the same question seems to have arisen, where one street railway was seeking to cross another street railway in the street,and the other company sought to enjoin it. The opposing company claimed the other had no right to be in the street, but the Supreme Court held it could not raise that question. The court say in regard to the injunction: (Market Street Railway v. Central Railway, 51 Cal. 583), “The maintenance of a horse railroad on the streets of a city is a mere special mode of using the street, and does not exclude the public from use of the street, nor prevent the crossing of its track by another railroad, provided the crossing is effected with as little damage as may be.” “We see nothing in the circumstances here which required the interposition of a court of equity to enjoin the Central R. R. Co. from maintaining their road in the manner they appear to have pursued. The question made as to the authority of the city to grant street railroad companies the right to use the streets of the city is not material to the disposition of this case. If the defendant is in fact occupying or using the street without proper license to do so, it is no concern of the plaintiff any more than of any other private person, but must be inquired into by, the appropriate procedure.” See also Brooklyn Central R. R. Co. v. Brook *673 lyn City R. R. Co., 33 Barb. 420; Lyne & Boston R. R. Co. v. Boston & Lowell R. R. Co., 114 Mass. 88.
Baker, Smith & Baker, and Pratt & Wilson, for plaintiffs.
Frank H. Hurd, Orville S. Brumback, and John F. Kumler, for defendant.
It is argued, of course, that so long as there remains any interest in plaintiff that is of value, and it is taken by the defendant company, the courts should enjoin the taking of it. But it should be born in mind all the time- — and it is a matter that has pressed upon my mind, at least, a good deal —that the use of these tracks is now practically in the Consolidated Street Railway Company. It is true that they have not gone to work to make any formal written lease; it was not necessary so long as the Consolidated owners own the whole stock of the Metropolitan and of the Central Companies; they, of course, could control the matter. The rights of the Consolidated Street Railway Company have been appropriated in the probate court under the statute, and the moneydeposited there in pursuance of the statute, and the verdict of the jury having been confirmed, the defendant company obtained all the rights that the Consolidated Company has along those tracks. Certainly, to-day and until that parol lease is terminated, it has the right to pass along those tracks and use them in the same manner that the Consolidated is using them, and we take it that plaintiffs have no more right to stop the Electric Street Railway Company than they would the Consolidated Street Railway Company,from running. We, therefore, come to the conclusion, after a very full discussion of the matter- — and it seems to us clear and correct in our minds — that plaintiffs have no interest left in the road of sufficient magnitude to call for the intervention of a court of equity.
The petitions will be dismissed.