Yeaman, J.
Plaintiff brings this action to recover damages for injuries to his property alleged to have been sustained by reason of the construction of a viaduct on Union avenue, the main business thoroughfare of said city, in front of and in close proximity to his premises. The gravamen of the action is the exclusion of light and air from valuable business build *343 ings erected on plaintiff’s lots, the diversion of travel and traffic, and the obstruction of his approaches thereto. No part of plaintiff’s property was appropriated, nor is it claimed there was any encroachment thereon, nor that his possession was disturbed. The claim is for consequential damages resulting from the proximity of the viaduct to property abutting Union avenue.
To the complaint defendant interposes a demurrer, general and special.
The grounds of special demurrer were disposed of during the argument, so that it is only the issue of law raised by the general demurrer, that the complaint does not state facts sufficient to constitute a cause of action, which will now be considered. If a cause of action exists at all, the complaint is sufficient, and the single question presented for solution is the construction to be given to the word damaged, occurring in section 15, bill of rights, which provides: “That private property shall not be taken or damaged for public or private use without just compensation.”
The later constitutions of some of the older States contain a like provision, and in England and a few of the States of this Union, statutes of a similar import have been enacted.
Courts of last resort, of conspicuous ability, entertain opposing views as to the construction to be given these provisions.
The Supreme Court of Illinois, in Rigney v. City of Chicago, 102 Ill., 68, in construing similar language in the Constitution of that State, takes the broad ground, that the addition of the word damage was not intended to conserve existing rights, but is “significant of a deliberate purpose to declare a new rule of civil conduct, from which spring new rights which did not before exist.” The reasoning of the Court leads to the conclusion that in that State, consequential injuries to abutting property, resulting from changes in street grades, theretofore regarded as damnum absque injuria, require compensation.
This view, however, is not in harmony with previous decisions of the same Court. In Stone v. F. P. & N. W. R. R. Co., 68 Ill., 396, the Supreme Court of that State, in construing the constitutional provision now under consideration, say, inter alia: “ The commerce of the country and the unbounded wants of the public demand that public streets in towns and cities *344 should be used * * * * for various legitimate purposes, which will, to a greater or less extent, discommode persons residing or doing busipess upon them, and just to that extent damage their property; and yet such damage is incident to all city property, and for it a party can claim no remedy. * * The clause in the Constitution, ‘private property shall not be taken or damaged for public use without just compensation,’ must receive a reasonable construction. While the interest of the private citizen should be guarded and protected, the commercial interests of the country and the great good of the public should not be lost sight of.”
The conclusions reached by the Court in Rigney v. City of Chicago have been adopted in recent cases determined in the Courts of last resort of Nebraska, Georgia and Texas, and Judge Hallett refers to it with approval in a late opinion in Mollandin v. U. P. Ry. Company.
While not intending to express a decided opinion as to whether a distinction should be made between acts done under authority of law by a municipal or other public body in the execution of a public trust, and similar acts done under like authority by a private corporation acting primarily for a private advantage, yet it seems to me worthy of note that the opinion of Judge Hallett, and those in Nebraska and Texas, were in actions against railroad corporations, the road beds of which had been constructed in public streets.
I have had no opportunity to examine the English decisions construing the acts of Parliament which provide for compensation for lands “which shall have been taken or injuriously affected.” Pierce, in his Law of Railroads, at page 208, says : “ These acts are construed as securing, but not enlarging, existing rights, and as supplying a new remedy only where one would have been available at common law if the acts complained of had not been authorized by Parliament.”
A like construction has been given to statutes of similar import in this country. (Lehigh, etc., R. R. Co. v. Thorne, Penn. St., 206; Columbia, etc., Bridge Co. v. Geisse, 35 N. J. L.; 558; G. R. & I. R. R. Co. v. Heisel, 38 Mich., 62.) And inferentially, if not directly, by the Supreme Court of this State in C. C. R. R. Co. v. Mollandin, 4 Colo., 154.
It is said this question was not under consideration by the *345 Supreme Court in the case last cited. But in view of some of the conclusions there announced it should be assumed that the Court fully considered the effect of the statute laws of the Territory in force in 1875, which appears from a report of the same case in 3 Colo., 173, to be the year in which that action originated.
Sec. 48, Ch. 18, R. S. 1868, provided that when in the course of construction of a railroad, private property should be “taken or injuriously affected,” compensation should be made to the owner.
In the Mollandin case the action was brought to recover damages for injuries arising from the construction and operation of a railroad on a street in front of plaintiff’s premises. It was alleged that the passing trains jarred and injured the buildings, that smoke, cinders and ashes were emitted upon and into the buildings, and that ingress and egress to and from the property were impeded.
Upon these facts, and with the comprehensive statute referred to in full force, the Supreme Court say: “Where there is nothing in the charter of the railroad company or statute requiring compensation for such damages, and where the fee of the streets is in the town or city authorizing the construction and operation of such railroad, the latter is not liable for damages resulting to the premises of abutting lot owners not actually taken by the railroad company in the construction and lawful operation of the road.” And further in the same opinion : “When, therefore, a railroad company is authorized by municipal law to construct and operate its road through and across a street under such control, it is in the exercise of a lawful right, and so long as it keeps within the bounds of such lawful authority it is not liable in a common law action, except for injuries done wantonly or without reasonable cause.”
No question is raised as to the authority of defendant to construct the viaduct, or that the work was not carefully and skilfully performed. Such authority is expressly conferred by the ninth subdivision of Section 2655, General Laws, and the inquiry is to what could this power be exercised without making compensation to property owners for resulting injuries.
The construction of the approaches to the viaduct may *346 properly be regarded as a change of the grade of Union avenue at that point.
Independent of constitutional or statutory inhibition, the general rule is well settled by adjudications that a municipal corporation may, in the exercise of a power granted by the State, elevate or depress the grade of a street without making compensation to owners of abutting property for resulting injuries, unless the power has been abused by an unskillful execution.
Has the rule of law governing the exercise of this power by municipal corporations been extended by the fifteenth section of our bill of rights? Remedially, I think it has, just as it was affected by -the provisions of the Revised Statutes of 1868. And in considering the limits of this extension it is quite immaterial whether the section be construed as “declaring a new rule of civil conduct from which spring new rights,” or as “securing but not enlarging existing rights.” The essential point is, that a remedy has been guaranteed, whether the rights be regarded as existing or newly created.
In determining the effect or extent of the remedy, I am inclined to adopt, as being more consonant with the objects of constitutional limitations, the conclusions of the English courts, that the remedy has been enlarged only to include those cases where one would have been available at common law, if the act complained of had been performed without legislative authority.
No reason occurs why a construction should be given to the language of the constitution different from the one which presumably prevailed as to the provisions of the Revised Statutes to which reference has been made. Private rights were then'as completely protected by statutory enactments as they now are by constitutional provisions.
Section 2647, General Laws, provides that “all avenues, streets, alleys and parks * * * * shall be deemed to be public property, and the fee thereof be vested in such city or town.” The Supreme Court of this State, in C. C. R. R. Co. v. Mollandin, supra, upon this subject say: “The fee of the streets being in the city * * * * the municipal authorities of the city, by virtue of their ordinances, under the legislative *347 power of the State conferred upon such municipality, are empowered to exercise complete control over such streets.”
This rule being established, it follows that a municipal corporation has the same dominion over its streets that an individual has over his private property, and in the lawful exercise of that absolute power, is liable only to the same extent. A private owner, upon his own soil, may do any act not amounting to a nuisance, nor resulting in some direct physical injury to his neighbor’s property, and no liability will attach therefor.
If the foregoing conclusions be correct, and the remedy, secured by the constitutional provision under consideration, extends only to those cases in which the city would have been liable had the act complained of been performed without legislative sanction, then the defendant, in constructing the viaduct, ■would be liable only for creating a nuisance, or for some direct physical injury to plaintiff’s property.
The framers of the constitution must have used the word damage with reference to its known and accepted legal sense, and not with the purpose of extending or enlarging its meaning.
Any other construction than the one here adopted would be in effect to say that the liability of a municipal corporation, in respect to its property, is greater than that of a private citizen, and that an act performed by legislative permission would give a right of action where none would exist had the same act been done without the sanction of State authority.
The fact that the city holds the fee of the streets in trust for the public and is responsible for any abuse of that trust, does not, to my mind, detract from the soundness of the conclusions reached. The trust reposed in the city is properly observed so long as the uses of the streets are such as are authorized by law, and not inconsistent with their use as open public highways.
This construction, it seems to me, affords ample security to the property rights of individuals, and a proper encouragement to the prosecution of necessary and convenient public enterprises.
Tested by the views of the law here expressed, the averments of the complaint are insufficient to constitute a cause of action, and the demurrer will therefore be sustain^.