THE BROOKLYN CITY AND NEWTOWN RAIL ROAD COMPANY *vs.* THE CONEY ISLAND AND BROOKLYN RAIL ROAD COMPANY.

The legislature possesses the power to confer upon a corporation the privilege of building and using a horse rail road in the streets of a city, without the consent of the owners of the soil over which the streets are laid out; such a use of the street being merely a mode of exercising the public right of travel, and not an appropriation of the property of the owners of the land, requiring compensation in damages.

Such a franchise or privilege may also be created or conferred without the consent of the city authorities, if the legislature sees fit to repeal, *pro tanto*, the portions of the general rail road act, or of any other statutes, requiring such a consent.

Mere priority of grant will not give to a rail road company the exclusive right to the use of the streets in a city, through which they are authorized, to construct their railway, as a part of their franchise.

In the absence of any such exclusive privilege, in the grant or permission of the common council, to the grantees, for the construction and use of their road, none will be implied.

The construction of another rail road through the same streets embraced in a

Brooklyn City &c. R. R. Co. *v.* Coney Island &c. R. R. Co.

previous grant to another company, is not in itself an infringement of the franchise of the prior grantees, or an encroachment upon their rights.

If the use of the streets by the second company is unlawful, it is not an injury to the prior grantees, unless it prevents them from constructing their road, or from using it; and no action can be maintained by the prior grantees, to restrain an act not specially injurious to them.

Until the second company are shown to be committing or threatening some act which is not only an interference with the rights of the public, but specially injurious to the prior grantees, they cannot be restrained, at the suit of the latter.

The case of *The Brooklyn Central Rail Road Co.* v. *The Brooklyn City Rail Road Co.* (32 *Barb.* 358,) explained.

THE routes which these two companies contemplate to operate, enter the city of Brooklyn from opposite directions, converge towards Fulton ferry, and in Water street (leading to the ferry and two blocks from it) they unite. On the 27th of June, 1861, the defendant proceeded to construct, as a part of its route, a railway in Water street, and nearly finished a double track through the two blocks. The plaintiff, at this time, had not taken possession of any part of its route. The plaintiff, claiming an exclusive railway franchise in the street, obtained an injunction excluding the defendant from the use of such street. This appeal was taken from an order of Judge Brown, denying a motion to dissolve this injunction. The opinion of the court sets forth all the material facts.

*G. T. Jenks,* for the appellant.

*L. Birdseye* and *David Dudley Field,* for the respondent.

*By the Court,* EMOTT, J. The plaintiffs are a corporation, formed under the general rail road act of the state, to construct and operate a rail road from the city of Brooklyn to Newtown, in Queens county. In order to lay down their road through the streets of the city of Brooklyn, they required the assent of the city authorities. (*Gen. Rail Road Act, Laws of* 1850, § 28, *subd.* 5.) Accordingly, on the 30th day of July, 1860, they procured from the common council of the city of Brooklyn authority to construct and maintain

their road through certain streets of said city, of which Water street is one. Under this grant they have proceeded to cause surveys to be made, and a map of the route to be filed, and entered into contracts for the construction of the track. It appears that this is to be a single track in Water street, and it also appears that the construction has not been commenced, at least in that street.

The defendants are also a corporation formed under the general law, to build a road from Coney Island to some point in the city of Brooklyn. But the defendants do not assert a right or title to construct their road through the city of Brooklyn pursuant to the provisions of the general rail road act, or by the authority and consent of the common council. For some reason, which we might conjecture but which it is not necessary to discuss, they obtained from the legislature an act which was passed on the 20th of April, 1861, (*Laws of* 1861, *p.* 766,) and which operates as a repeal, *pro tanto,* of the provisions of the general rail road law. By this statute, the defendants are authorized to construct and operate their road through the several streets designated on a " map or profile of said road made by Jarvis Whitman, city surveyor," without naming in the statute the streets intended, or even stating where the map was, or was to be filed or deposited, upon which they were designated. The defendants were also authorized by this statute to lay their road with rails of a less weight than those prescribed by the general law. The condition upon which they are allowed these privileges is, that they obtain " the permission of the common council of said city, to construct said rail road within said city, or the consent of a majority of the owners of property fronting upon any street or avenue in said city, through or over which it is proposed to lay said rail road."

The defendants, on or about the 27th of June, 1861, proceeded, somewhat suddenly, and rapidly to tear up Water street in the city of Brooklyn, in order to lay down a double track. The plaintiffs then commenced this action, and ob-

Brooklyn City &c. R. R. Co. *v.* Coney Island &c. R. R. Co.

tained an injunction restraining the defendants, on the ground that they were interfering with their franchise. The injunction for which the complaint prays, and which I take it for granted was ordered preliminarily, although no copy of the injunction order is among these papers, goes to restrain the defendants from building, operating or using any track through or in Water street, or any part thereof.

In the answer which was put in by the defendants, they assert their incorporation, and the passage of the special law which has been referred to, and they allege and rely upon the consent of a majority of the owners of that portion of Water street, between Main and Fulton streets, to the construction of the road. They also allege a permission by the common council to construct their road within the city, but they do not allege that this permission specified or included Water street, or that it authorized the use of a rail of less weight than the standard. The action of the common council was in January, 1861, before the defendants had procured the law which they set up in their answer, and it may for this reason also be laid entirely out of the case.

The plaintiff's counsel argues against the validity of the act under which the defendants have proceeded, that it will take from the municipality of Brooklyn their right to the streets, without compensation. We are not aware that the municipality of Brooklyn have any rights of property in the streets of the city. Nor do we agree that the use of a street by a city rail road using cars propelled by horses is an appropriation of property so as to require compensation. The opinion of Mr. Justice Leonard, in the case cited in the brief, is not reported and has not fallen under our observation. It probably proceeds upon the peculiar rights, and the special laws affecting the city of New York. So far as we understand the case to hold that the use of a street by a city rail road, constructed in the usual manner and using cars drawn by horses, is an appropriation of the soil, in like manner as its use by a railway using steam and driving trains of cars,

the decision is in conflict with the opinion of this court in *The Brooklyn Central and Jamaica Rail Road Co.* v. *The Brooklyn City Rail Road Co.,* (33 *Barb.* 420,) to which I shall have occasion to refer again, hereafter.

It is farther urged that the act under consideration should be construed to require, in order to confer upon the defendants the right to lay down their track, both the permission of the common council and the consent of the owners of property on the streets. In other words, it is insisted that the word " or" in this part of the act, must be read " and." I confess I see no reason for putting such a construction upon the statute. The legislature possessed the power to confer this privilege of building and using a horse rail road in the streets of the city of Brooklyn, without the consent of the owners of the soil over which the streets are laid out, because such a use of the street is merely a mode of exercising the public right of travel, and not an appropriation of the property of the owners of the land, requiring compensation in damages. This is expressly determined, so far as this court is concerned, in *The Brooklyn Central and Jamaica Rail Road Co.* v. *The Brooklyn City Rail Road Co.,* (33 *Barb.* 420,) already referred to. Such a franchise or privilege may also be created or conferred without the consent of the city authorities, if the legislature see fit to repeal, *pro tanto,* the portions of the general rail road act, or of any other general statutes requiring such a consent. In the act we are now considering, the legislature have conferred such a privilege, on condition that the grantees obtain either the consent of the adjoining owners, or the permission of the city authorities. That is the literal meaning of their act; and as they had the power to confer the franchise without imposing either condition, I am not able to see upon what principle we should be authorized to force a construction of the statute which would require both.

It is also contended that the consent of the owners of property, intended by the statute, is the consent of the owners on

*every* street through which the defendants' road is to pass. It is obvious, of course, that the consent of the owners of every such street must be obtained before the franchise can be made fully available, by the use of the road and the demand and receipt of fares for the transportation of passengers over the route. Whether the defendants could be stayed from laying down their rails in any street or portion of a street, until they had obtained the proper authority from the owners of property fronting on all the streets which they were to use, is, I think, a different question. It is not, however, necessary to decide that question now; because the plaintiffs have no right to raise it, for reasons which I will presently state.

There is another remark which is necessary to make before arriving at what is the vital point in the case now before us. The defendants in their answer aver that they have procured the consent of a majority of the owners of property fronting on Water street, between Main and Fulton streets, and rely on that as their justification. They do not state in the answer who these owners are, or how many, nor whether by a majority is meant a majority in number or a majority in interest, although the affidavit of Mr. Talmadge is somewhat more explicit on the latter point. There is also, it should be observed, no statement of what is the route designated on the map to which the statute refers, nor any identification of any such map, or even any evidence that such a map exists, or is filed or recorded any where. The motion to dissolve the injunction was made upon the answer and upon an affidavit of David M. Talmadge, who states that he is president of the corporation of the defendants. This affidavit gives the alleged consent of the property owners in terms, except that the signatures are entirely omitted, and in place of them the person making the affidavit swears that the persons signing were the owners of the larger portions of the property affected, and that he saw them sign. The omission to insert these names, or to file or furnish a complete copy of this document, upon which the rights of the defendants so essentially depend,

is a most singular circumstance. To my mind the affidavit and answer, under such circumstances, would not furnish sufficient evidence of the existence and execution of such a consent as is required by this clause of the statute. If the case turned upon that, I should be obliged to hold, as I suppose the judge who heard the motion to dissolve the injunction did hold, that the defendants had not made out a compliance with the conditions upon which their franchise was conferred.

We may assume, therefore, that the defendants are guilty of an unauthorized act in tearing up the pavement, and laying down rails in Water street. The next question .is, and that is the vital question in the case, whether in so doing they have violated any right, or infringed any franchise of the plaintiffs, and whether the latter can maintain this action to restrain them.

It sufficiently appears by the affidavit of Mr. Catherwood, which was read by the plaintiffs on the motion to dissolve the injunction, that the construction of the defendants' road or track will not necessarily interfere with the construction or use of that of the plaintiffs. The inconvenience or injury, if any, is to be to the public, in the ordinary use of the street, or to the adjoining proprietors. Nor is there any allegation in these papers that the use of this portion of their road, when constructed by the defendants, will interfere with the travel, or lessen the profits or value of the franchise of the plaintiffs. It does not appear whether these roads are rival or competing roads, to any extent. The complaint in this action is framed upon the theory that the plaintiffs, on the one hand, having the prior grant or title, acquired the exclusive right to the use of this street by their railway, and that this is a part of their franchise. It seems to proceed also upon the theory that the defendants, on the other hand, took possession of the street in order to assert, and if permitted to lay down their road would acquire, an equally exclusive right. I do not understand the defendants or their counsel to claim

any such right. If the effect of a construction of the defendants' track in this street, in the manner they propose, would be practically to exclude the plaintiffs from the street, that would be a proper subject of complaint, and such a course of proceeding would no doubt be restrained. But that is not the theory of this action. The plaintiffs claim that their franchise extends to and includes an exclusive right to the use of Water street, and of every other street in which they are authorized to lay down and operate their horse rail road. This is an entire mistake. There is no such exclusive privilege contained in the grant or permission of the common council to the plaintiffs, for the construction and use of their road; and it is well settled that no such privilege is implied in the grant of such a franchise. Not to refer to the older cases, the question of the extent of such a franchise has been before us in several of the recent cases, arising out of the conflicting claim of city rail roads similar to these. In the case of *The Brooklyn Central Rail Road Company* v. *The Brooklyn City Rail Road Company*, (32 *Barb.* 358,) which was cited by the plaintiffs' counsel, we simply held that the defendants had, as a part of their franchise, an exclusive right to use a track which they had constructed for the propulsion of cars and the carriage therein of passengers for hire. None of the judges meant to assert that the construction or the privilege to construct and use a track in a particular street or streets excluded all others from that street, or deprived the legislature or other proper authorities of the right to authorize even a road completely parallel or in the same streets. In the still more recent case of *The Brooklyn Central and Jamaica Rail Road Co.* v. *The Brooklyn City Rail Road Co.*, to which I have already referred, Judge Brown defined most clearly a franchise similar to this, and his observations met the approbation of the whole court. He stated such a franchise to be the right to lay down and maintain upon the surface of a street a rail road, and to operate cars thereon, of course for the transportation of persons &c. for hire, subject

to the ordinary uses of the street for passage and travel.   He adds, " No one claims that the plaintiff possesses the right to exclude others from a similar use of the street, or that the legislature may not, in the exercise of its power, grant a similar franchise to another individual or company, provided that it be so exercised and enjoyed as not to impede or obstruct the cars and vehicles of the plaintiff in their transit over their track."   This is an accurate definition of the rights of parties in cases like the present, and it entirely negatives the idea of an exclusive right to this street in the plaintiffs, in consequence of their prior grant.   The construction of another rail road through the same street is not in itself an infringement of the franchise of the plaintiffs, or an encroachment upon their rights.   Conceding that the use of the street by the defendants is unlawful, it is not an injury to the plaintiffs, unless it prevents them from constructing their road or from using it, and no action can be maintained by the plaintiffs to restrain an act not specially injurious to them.

The acts of the defendants, if unauthorized and unlawful, as I assume that they are upon these papers, may be productive of injury to the community at large.   The defendants are obstructing a common highway, and this, if unauthorized, is a public nuisance.   But no special injury results to the plaintiffs from that act alone, or from a mere common nuisance.   No one but the persons or officers intrusted by the law with the protection of the rights of the public, can invoke the aid of this court to restrain such a nuisance.   Even if the defendants should proceed unlawfully to use the railway which they are laying down, and to demand and receive tolls or fares without authority, yet as long as this did not interfere with the profits or revenues of the defendants, it would not be for them to proceed against such a usurpation.   The law on this subject is well laid down, and the cases thoroughly discussed, by Judge Denio, in his opinion in *Doolittle* v. *Supervisors of Broome County*, (18 *N. Y. Rep.* 160.) Conceding therefore all which is alleged against the defend-

ants, still, until they are shown to be committing or threatening some act which is not only an interference with the rights of the public but specially injurious to the plaintiffs, they cannot be restrained at the suit of the latter. There is no sufficient allegation or proof of any such injury in the present case, and the prayer of the complaint and the injunction granted upon it go much farther.

The order denying the motion to modify or dissolve the injunction should be reversed, with ten dollars costs of the appeal, and an order entered dissolving the present injunction, with liberty to the plaintiffs to apply upon an amended complaint or otherwise, as they may be advised, for an order forbidding the defendants from interfering with them in the construction, maintenance or use of their track.

[KINGS GENERAL TERM, December 9, 1861.  *Emott, Brown* and *Scrugham,* Justices.]