Hinchman et al. *v.* Paterson Horse Railroad Co.

JOHN H. HINCHMAN and others *vs.* THE PATERSON HORSE RAILROAD COMPANY.

1. A public nuisance must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance.

2. Whether the construction of a railroad in the street of a city, would operate beneficially or injuriously to the public right of way; whether it would prove a public benefit or a public nuisance, are questions to be determined by the legislature and by the city council. If the road prove an obstruction to the street, and a public inconvenience and injury, it is not punishable as a nuisance, if constructed as prescribed by the charter.

3. In cases of unquestioned public nuisance, a court of equity will not interfere by injunction, except in cases of special and serious injury to the complainant, distinct from that suffered by the public at large.

4. It is the settled law of this state, that a railroad company authorized to acquire lands for the use of their road by condemnation, and required to make payment or tender of compensation to the owner before occupying the land, cannot construct their road across or upon a highway, without making compensation to the owner of the soil occupied by the highway.

5. The building and operation of a horse railroad in the streets of a city, under proper restrictions and limitations, by authority of the legislature

and of the city council, is a legitimate use of the highway, and an exercise of the public right of travel, and not a taking of private property for public use within the provision of the constitution.

6. Where the complainant's right is doubtful, and no irreparable injury will result, it is not a proper case for an injunction.

7. The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant; and the grantee has the exclusive right to the soil subject to the right of way.

8. A bill filed by the owners of several and distinct lots of land, having no common interest, to enjoin a nuisance common to all the land owners, but each complainant seeking relief for special injury to his own property, is demurrable for misjoinder of parties.

9. As a general rule, objection on the ground of misjoinder should be made by demurrer.

The complainants are, respectively, the owners of lots butting upon Congress and Market streets, in the city of Paterson, and claim title to the middle of the street. The defendants are about to construct a horse railroad through those streets, under the authority of their act of incorporation. The complainants ask to enjoin the construction of the road.

1. Because the construction and use of the road will prove a permanent obstruction to the ordinary use of the street; a public nuisance, and a consequent injury to the value of the property.

2. Because the property of the complainants is taken for public use without just compensation.

*Mr. Woodruff* and *Mr. Gilchrist,* for complainants.

*Mr. A. S. Pennington* and *Mr. A. O. Zabriskie,* for defendants.

Cases cited by complainants' counsel. 2 *Story's Eq. Jur.,* § 923–9; 2 *Mylne & C.* 129–30–33; 14 *N. Y. R.* 526; 6 *Johns. Ch. R.* 439; 8 *Sim.* 193; *Ibid.* 272; 38 *Barb.* 283; 9 *N. Y. R.* 273; 3 *Atk.* 21; 6 *Paige* 83; 16 *N. Y. R.* 97, 111; 1 *Bald.* 226; 15 *Wisconsin* 101; 3 *Law Register* 378; 2

*Beas.* 314; 3 *Kent's Com.* 432–3–4; 1 *Conn.* 103; 2 *Strange* 1004; 1 *Burrow* 133; 6 *East.* 154; 2 *Mass.* 127; 6 *Mass.* 454; 2 *Strange* 1238; 1 *Wilson* 107; 23 *N. Y. R.* 63-5; 3 *Paige* 45; 24 *N. Y. R.* 655; 25 *N. Y. R.* 527; 4 *Zab* 527; *Constitution, Article IV, Sec. VII*, § 9; *Angel on Highways*, § 314; 4 *Zab.* 592; 22 *Conn.* 85; 2 *Zab.* 293, 304; *Angel on Highways*, § 224; 2 *Zab.* 368; 4 *Cush.* 71; *Pierce on Railways* 513–14; 1 *Eng. Railway Cas.* 154, 135; *Redfield on Railways* 127; 2 *Gray* 574; 7 *Ellis & Black.* 660; 16 *Q. B.* 923; 9 *Barn. & Cress.* 884, 5 *Hill* 170–5; *Broom's Leg. Max.* 152–5; 3 *Sumner* 197; 14 *Adol. & Ellis* (*N. S.*) 134–5; 2 *Green's R.* 254; 3 *Hurlst. & Nor.* 743–9; 1 *Barn. & Ad.* 441; 4 *Zab.* 81; *Ibid.* 495–6.

Upon the question of joinder of parties. 1 *Daniell's Ch. Prac.*, p. 240, ch. 5; see also *note 2, to same page; Ibid.* 284–6–7–8; 4 *Paige* 510; *Story's Eq. Pl., note 2 to* § 544.

Cases cited by defendants' counsel. 2 *Stockt.* 358; *Washb. on Easements, p.* 138, § 18; 3 *Dutcher* 80; 6 *Wharton* 25, 45; 14 *N. Y. R.* 530; 2 *Beas.* 314; 34 *Barb.* 519; 23 *Law Reporter* 619; 27 *Penn.* 354; 8 *Amer. Law Reg.* 678; 34 *Barb.* 494; 35 *Barb.* 364; 37 *Barb.* 357; 39 *Barb.* 494.

The Chancellor. A public nuisance must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance. *Rex* v. *Pease*, 4 *Barn. & Ad.* 30; *Bordentown and S. Amboy Turnpike Co.* v. *Camden and Amboy R. R. Co.*, 2 *Harr.* 314; *Davis* v. *The Mayor of New York*, 14 *N. Y. R.* 506.

Whether the construction of a railroad in the street of a city would operate beneficially or injuriously to the public right of way; whether it would prove a public benefit or a public nuisance, are questions to be determined by the legislature and by the city council. If they err in judgment, and the work prove an obstruction to the street, and a public inconvenience and injury, it is not punishable as a nuisance, if constructed as prescribed by the charter.

G *

The injury which the owners of lots upon the street, suffer from obstructions in the street and impediments to traveling, are common to all the public. In cases of unquestioned public nuisance, a court of equity will not interfere by injunction, except in cases of special and serious injury to the complainant, distinct from that suffered by the public at large. *Corning* v. *Lowerre*, 6 *Johns. Ch. R.* 439; *Bigelow* v. *Hartford Bridge Co.*, 14 *Conn.* 565; *Allen* v. *Board of Chosen Freeholders*, 2 *Beas.* 68; *Zabriskie* v. *Jersey City & B. Railroad Co.*, *Ibid.* 314.

The real question in the cause is, whether the charter of the defendants, authorizing them to lay a railroad through the streets of the city over the land of the complainants, is a violation of that provision of the constitution which prohibits the taking of private property for public use without just compensation.

I take it to be the settled law of this state, that a railroad company authorized to acquire lands for the use of their road by condemnation, and required to make payment or tender of compensation to the owners before occupying the land, cannot construct their road across or upon a highway, without making compensation to the owner of the soil occupied by the highway. *Starr* v. *Cam. & Atl. R. Co.*, 4 *Zab.* 592; *The Central R. Co.* v. *Hetfield,* 5 *Dutcher* 206.

The principle is fully sustained by the cases of *The Trustees of the Presbyterian Society* v. *The Auburn & Rochester R. Co.*, 3 *Hill* 567; *Williams* v. *The N. Y. Central R. Co.*, 16 *N. Y. R.* 97; *Mahon* v. *The N. Y. Central R. Co.*, 42 *N. Y. R.* 658; *Wager* v. *Troy Union R. Co.*, 25 *N. Y. R.* 526.

It would seem to follow as a necessary consequence, that the owner of the soil under the highway cannot be deprived of his property, or be prejudiced in any right therein, without compensation, even by express authority of the legislature, without a violation of the provision of the constitution, which declares that private property shall not be taken for public use without just compensation. It was so held

by Mr. Justice Haines, in the case of *Starr* v. *Camden & Atlantic R. R. Co.*, already referred to. He said: "The premises in question, (viz. the land occupied by the highway) being private property, could not, either by the constitution or by the charter of the company, be taken, without compensation." The opinion is fully sustained by the cases in New York already cited. In the case of *The Trustees of the Presbyterian Society* v. *The Auburn and Rochester R. R. Co.*, 3 *Hill* 569, Chief Justice Nelson said: "It is quite clear that the legislature had no power to authorize the company to enter upon and appropriate the land in question for purposes other than those to which it had been originally dedicated, in pursuance of the highway act, without first providing a just compensation." And in *Williams* v. *The New York Central R. R. Co.*, 16 *N. Y. R.* 111, Judge Selden, delivering the opinion of the court, said: "The legislative provisions on the subject were probably intended to confer the right, so far only as the public easement is concerned, leaving the companies to deal with the private rights of individuals in the ordinary mode. If, however, more was intended, the provisions are clearly in conflict with the constitution, and cannot be sustained."

The principle as applied to ordinary railroad companies, which are authorized to excavate the soil, to raise embankments, to construct tunnels, and to use locomotive power running at high rates of speed, seems clear of difficulty. "The two uses," viz. "that of railroad and ordinary highway, are almost, if not wholly, inconsistent with each other, so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated." *Inhabitants of Springfield* v. *Connecticut River R. R. Co.*, 4 *Cush.* 63. This is especially true when the land taken is applied exclusively to the use of the railroad, as by tunneling under the highway for the railroad track.

But there is more difficulty in the application of the principle, where a railroad track is permitted by the municipal authorities to be laid upon the surface of the streets, and to

be used as a part of the highway, and in connection with it, as in case of street railroads. They are ordinarily, as in this case, required to be laid level with the surface of the street, in conformity with existing grades. No excavations or embankments to affect the land are authorized or permitted. The use of the road is nearly identical with that of the ordinary highway. The motive power is the same. The noise and jarring of the street by the cars is not greater, and ordinarily less, than that produced by omnibuses and other vehicles in ordinary use. Admit that the nature of the use, as respects the traveling public, is somewhat variant, how does it prejudice the land-holder? Is his property taken? Are his rights as a land-holder affected? Does it interfere with the use of his property any more than an ordinary highway?

Nothing is claimed in support of this view of the case, on the ground that city railroads are a great public convenience and benefit. If they are so, the public can afford to pay for it. That is certainly no reason why individual property should be taken for public use. But admit, as the counsel of the complainants claim, that a railroad constructed and managed as street railroads frequently are, is a serious public inconvenience, an obstruction to travel, and an injury to the interests of the city; does that affect the rights of the land-holder any more than if the streets are suffered to become obstructed from any other cause, owing to the neglect or incapacity of the municipal corporation? The question at last recurs, what is taken from the landholder by a change in the use of the street, for which he is entitled to compensation? Neither his title to the fee, nor his right to the use or enjoyment of the land, is interfered with. The railroad company acquire no estate or interest in the land itself, but the mere right to the use of the highway or public easement. This view was adopted by Chancellor Williamson, in the case of *The Morris & Essex Railroad Company* v. *The City of Newark*, 2 *Stockt.* 358, and is sustained by many of the reported cases. *Williams* v. *The*

*N. Y. Central R. R. Co.,* 18 *Barb.* 222; *Philadelphia & Trenton Railroad Co.,* 6 *Wharton* 25; *Commonwealth* v. *The Erie & North E. R. R. Co.,* 27 *Penn* 354; *Elliott* v. *Fair Haven R. R.,* 23 *Law Reporter* 619; *People* v. *Kerr,* 37 *Barb.* 357; *Brooklyn Central & Jamacia R. R. Co.* v. *Brooklyn City R. R. Co.,* 33 *Barb.* 420; *Brooklyn City & N. R. R. Co.* v. *Coney Island & B. R. Co.,* 35 *Barb.* 364.

After much conflict of opinion, a different rule seems to have been settled in the courts of the state of New York. In the recent cases in that state, it is held, not only that the laying of a railroad upon a highway is a taking of private property, and a burden upon it beyond the servitude of the easement of the highway, but that there is no distinction, so far as the constitutional question is concerned, between a horse railroad in the streets of the city, and a railroad with broader powers operating by steam. *Wager* v. *Troy Union R. R. Co.,* 25 *Barb.* 533; *Craig* v. *Rochester City & B. R. R. Co.,* 39 *Barb.* 494.

I am, nevertheless, of opinion that the building and operation of a horse railroad in the streets of a city, under the restrictions and limitations contained in the charter of the defendants, by authority of the legislature and of the city council, is a legitimate use of the highway, and an exercise of the public right of travel, and not a taking of private property for public use, within the provision of the constitution. If it be admitted that this is a matter of doubt, it is, nevertheless, in accordance with a previous decision of this court, which, so far as I am aware, has not been questioned by any judicial tribunal of the state. It is of great importance that the law, where such large interests are at stake, should not be unsettled by conflicting decisions in the same tribunal.

Where the complainants' right is doubtful, and no irreparable injury will be inflicted by the construction of the road, it is not a proper case for an injunction. If the complainants' view of the case be correct, they have adequate

redress at law for all damages that may be sustained; or, their rights being established, they may invoke the power of this court to restrain the use of the road.

The presumption of law is, that the owners of the land on each side of the street, own to the middle of the street, and have the exclusive right to the soil, subject to the right of way. It is objected by the defendants' answer, that the complainants' titles do not extend to the middle of the street, because the lots as described, are bounded by the sides of the streets. But the established inference of law is, that a conveyance of land bounded on a public highway, carries with it the fee to the centre of the road, as part and parcel of the grant. 3 *Kent's Com.* 432–3; *Cooke* v. *Green*, 11 *Price* 736; *Champlin* v. *Pendleton*, 13 *Conn.* 26; *Adams* v. *Saratoga & Wash. R. R. Co.*, 11 *Barb.* 414; *Buck* v. *Squiers*, 22 *Vt.* 484; *Redfield on Railways* 159, *note and cases cited; Bissell* v. *The N. Y. Central R. R. Co.*, 23 *N. Y. R.* 61.

The bill is objectionable, on the ground of a misjoinder of parties. The complainants are owners of several and distinct lots, having no common interest, but seeking to enforce several and distinct claims. They seek to enforce no common right, as in cases of right of common, nor to obtain relief against a common wrong, as in cases of fraud, where all the creditors are equally affected. The bill seems to have been framed, under the impression that the nuisance was a grievance common to all the land-owners, and therefore, that all might properly be joined. But each complainant seeks relief for special injury to his own property by the construction of the railroad. On this ground, the bill is clearly demurrable. *Story's Eq. Pl.*, § 279, § 544.

Several occupiers of houses in town, cannot sue as co-plaintiffs to restrain the erection of a steam engine, which would be a nuisance to each of them, *Hudson* v. *Maddison*, 12 *Sim.* 416; and on the ground of misjoinder, the injunction issued in this case was dissolved, as it was also by Lord Eldon, in *Jones* v. *Del Rio*, 1 *Turn. & Russ.* 297.

As a general rule, the objection on the ground of misjoinder should be made by demurrer. But this is a mere injunction bill, and if the injunction should be granted, a demurrer would be fatal. No final decree could be pronounced in favor of the complainants, and nothing could be eventually gained in the present shape of the bill, by sustaining the present application.

If this were the only objection, it would not be suffered to stand in the way of the order for an injunction. The defendants would be put to their demurrer, and an opportunity permitted to the complainants, to present their claim in a form to avoid the technical difficulty. The decision is made solely upon the merits of the bill. It is desirable that the leading question in the cause should be disposed of, and if possible, promptly settled, irrespective of all technical or collateral issues.

The motion for an injunction is denied, and the rule to show cause discharged with costs.