THEODORE S. NICHOLS ET AL. v. THE ANN ARBOR & YPSILANTI STREET RAILWAY COMPANY.

*Street railways—Additional servitude—Injunction.*

The street-railway act of 1855 as amended (chapter 94, How. Stat.) confers no power upon a company organized under it to construct, maintain, and operate a railroad along the side of the traveled portion of a public country highway, with the consent of the township authorities, upon a road-bed not conforming to its grade, but made by means of cuts and fills, without compensation to abutting land-owners, at whose suit equity will perpetually enjoin the maintenance and operation of such a road.

Appeal from Washtenaw. (Peck, J., presiding.) Argued July 1, 1891. Decided July 28, 1891.

Bill to enjoin the construction and operation of a street railway. Complainants appeal. Decree reversed, and perpetual injunction granted. The facts are stated in the opinion.

*A. J. Sawyer* (*J. F. Lawrence,* of counsel), for complainants.

*B. M. Thompson,* for defendant.

[The authorities are so fully collected and reviewed in the case of *Detroit City Railway v. Mills,* 85 Mich. 634, that a summary of the briefs of counsel is omitted.— REPORTER.]

LONG, J. The bill in this case is filed to restrain and enjoin the defendant from placing ties and laying rails, and operating its railway, over and along the complainants' land, situate in the public highway, and from

running cars and trains of cars propelled by steam, or any other motive power, upon said highway, along and in front of complainants' premises.

The bill sets forth, substantially,—

That two of the complainants reside in the township of Ann Arbor, Washtenaw county, and that the complainant Lucy L. Granger resides in Bay City; that they are the children and only heirs at law of Erasmus D. Nichols, deceased, who was the owner in his life-time of certain lands situate in that township, having a frontage on the highway of about 40 rods, and that complainants, as such heirs at law, are the owners of said lands.

That on the 30th day of August, 1890, the defendant railway company filed in the office of the Secretary of State a paper purporting to be the articles of association of the Ann Arbor & Yysilanti Street Railway Company, and that said company proposes to run a railroad from Ann Arbor to Ypsilanti, upon and along the south side of the public highway between said cities called the "Ann Arbor and Ypsilanti Road," and that it has graded along the south side of said road from the terminus of said road, in the city of Ypsilanti, to the city limits of the city of Ann Arbor, and laid the ties and railroad track or iron thereon, excepting a few rods along and in front of premises owned by one John A. Bohnet in the township of Pittsfield, and the premises of the complainants, which lie adjacent to the city of Ann Arbor; that said grading, placing of ties, and laying of the iron is on the south side of said highway nearly the whole distance, except from what is known as the "stone school-house" to the limits of said city of Ann Arbor, over which last distance it is on the westerly side of said highway; that said grading along the line of said highway comes within two or three feet of the fences on the south and west sides of the same; that said defendant has completed the construction of said road, except along the premises of the complainants and said Bohnet, and purposes and intends, when the same is completed, to run trains of cars thereon, drawn by steam-engines, for the purpose of conveying passengers and freight upon, along, and over said railway. Complainants show by their bill, and charge, that the defendant, under its articles of association, if the same are valid, has the right to use on said

railroad an engine or motor to be operated by steam; that under the said articles, if the same are legal and binding, the said company is not only permitted to carry passengers, but is authorized to use the said road for the transportation of freight and property.

The complainant Theodore S. Nichols shows and charges in the bill that one William Campbell, claiming to act for the defendant or some other corporation, applied to him for his consent and permission to build its said road upon and along said highway, and that he signed some paper which was then and there presented to him by the agent of said company, giving his consent to the building of some railway; but he avers that the agent falsely and fraudulently represented to him that the proposed road was simply a street railway, and that the motive power to be used thereon was to be either electricity or animal power, and, in reliance upon the statements so made by the agent of the defendant, he subscribed the paper presented to him, the contents of which he is now unable to state, but he avers that by reason of said false and fraudulent representations the said paper is and of right ought to be null and void, and of no binding force and effect whatever.

The complainants Ella E. Nichols and Lucy L. Granger charge that they have given the defendant no consent or permission to construct and operate said railway in said highway in front of their premises, and that said railway has obtained no lawful consent of the supervisor and commissioner of highways of said township, but that the same was obtained upon the false and fraudulent representation that the motive power to be used by said street-railway company was to be either animal or electricity, and that, therefore, whatever consent was given by said commissioner and supervisor was of no binding force or effect whatever; that the paper purporting to give the consent of said supervisor and commissioner does not in any particular comply with the statute requiring the consent of the supervisor and commissioner, and that the acts and doings of the defendant, as set forth, have been done without warrant of law, and are not only an invasion of the rights of the complainants, but are also an unlawful appropriation of the public highway for railroad purposes; that the statute under which said pretended company was organized is no longer in force, and that there is no statute in this State which authorizes

the formation of any such corporation as the said defendant claims to be; that the defendant, as a corporation, has no legal existence, and has no right to enter upon any of the highways of this State, and build thereon a railroad of any description; that the paper purporting to be the consent of the township board of said township to build said road was not executed in accordance with any action theretofore taken by said board, nor was the same made and executed at any meeting of said township board.

Complainants claim by their bill that the construction and operation of said railway will cause a serious and lasting damage and injury to their said real estate, and that the corporation is not personally responsible for any judgment for damages; that the location of said track within two or three feet of the road fence, upon the west line of said highway, makes it necessary for them, in order to get into their fields or to their house and barns situate thereon, to cross the track of said railway; that their house fronts upon said highway, and is only a distance of 90 feet from the line of said highway, and that it will be impossible to hitch horses or other animals in front of their said premises without danger of their being killed or injured by the cars of the defendant; that the construction and operation of said railway will largely decrease the value of their real estate, and if allowed to be constructed and put into operation, will occasion them irreparable injury; that the operation of said road along said highway will not only be an injury to their property, but will occasion serious and lasting injury to the entire length of the road over which said railway runs; that they are forced to come to Ann Arbor or Ypsilanti to market all the produce and crops from said farm; that the only highway over which they can pass to either city is this highway, and, if defendant is permitted to complete the construction and continue the operation of said road, along said highway, it will be and remain a continuous cause of injury and damage to complainants, and a permanent obstruction in said highway, and an object of fright to their teams while engaged in marketing their produce and crops from said farm; that the construction and operation of said railroad will decrease the value of complainants' property at least $3,000.

Complainants further charge that the defendant intends

to proceed at once to complete the construction of said road along said highway, and to place thereon ties and railroad iron, and to run over and upon the same steam-engines and cars for the transportation of passengers and freight thereon, as often as one train every hour.

Defendant demurred to a portion of this bill, and answered as to the remainder. The causes of demurrer are:

1. That it appears upon the face of the bill that the defendant has been and is duly incorporated.

2. That the court has no jurisdiction in the cause to hear and determine the question of the incorporation of the defendant.

By way of answer, the defendant admits—

That it has graded its road-bed from a point in the city of Ypsilanti, near the Michigan Central depot, to the south boundary line of the city of Ann Arbor; that all of said road within the city of Ypsilanti is completed, and nearly the whole of said road from Ann Arbor to Ypsilanti has been tied and ironed, and is now ready to be operated as a street railway.

Defendant denies that its said railroad is in any correct sense a commercial railroad for the transportation of passengers and freight, upon which ordinary steam-engines, freight and passenger cars, are to be used and operated, and says it is strictly and simply a street rail-road for the conveying of passengers to and from the cities of Ann Arbor and Ypsilanti and intermediate points, and that the insertion in its articles of incorporation of authority to carry freight was designed merely to authorize defendant to carry light articles of merchandise for the benefit and accommodation of the passengers and others who may desire to have light articles of merchandise, purchased in Ann Arbor or Ypsilanti, transported to their homes in said cities, or on the line of said road; that the motor to be used on said road is no larger than a street-railway car, makes a less noise in operation than the electric car with overhead wires, emits little or no steam or smoke, and is as unobjectionable in every way as an ordinary street railway propelled by animal power.

Defendant further claims that it has obtained the right to use said highway from the proper authorities; that it has also obtained a right of way from all the persons owning land upon the said highway on the south and west sides thereof, except for a distance of about 40 rods across lands owned by one John A. Bohnet; and it admits that it obtained said right of way for the construction and operation of a street railway, and not for a commercial road.

Defendant further says that it obtained the right of way and consent to construct and operate its said road in said highway, across the lands described in said bill as complainants' lands, from the said complainant Theodore S. Nichols, and it denies that in obtaining such consent and right of way it made any false representations whatever to said Theodore S. Nichols; that said complainant Theodore S. Nichols, in giving the defendant such right of way and consent to construct and operate its said road, did so without restriction or limitation as to the rights of any other person who was an owner of said premises in common with himself; and that, under and by virtue of such consent and right of way so given by the complainant Theodore S. Nichols, it has a right of way for the construction and operation of its said road as to all of the complainants.

The defendant denies that the construction and operation of said road will cause any damage whatever to the lands described in said bill of complaint, but says that they will be greatly increased in value by the construction and operation of said road.   Defendant further claims that it has expended in grading its road, tieing and ironing the same, or become liable for, over $50,000, and that all of such expense has been incurred by the defendant, acting upon the consent and agreement of the said Theodore S. Nichols, giving defendant the right of way across the premises described in the bill, and that, unless it is permitted to complete and operate its said road, it will thereby suffer great loss and damage, and that said loss and damage will amount to over $10,000.

The testimony in the case was taken in open court before his honor Judge Peck, then sitting in that court, who, upon the conclusion of the case, entered a decree

dismissing complainants' bill, but without prejudice to the right of the complainants to proceed in an action for damages.

From this decree complainants appeal.

The defendant corporation was organized under chapter 94, How. Stat. Its articles of association recite that the corporators desire to become incorporated under the provisions of chapter 94, How. Stat., being Act No. 148, Laws of 1855, as amended by Act No. 91, Laws of 1871, entitled "An act to provide for the construction of train railways," as added to by Act No. 14, Laws of 1861, as amended by Act No. 188, Laws of 1867, which provides for—

"The incorporation of persons for the constructing, owning, maintaining, and operating of train railways or roads for the conveyance of persons or property, to be operated by horse or other animal power, or by pneumatic or other motive power, or by any combination of them, or by steam, as shall be determined by the board of directors, and for the purpose of constructing and operating railways through the streets of any town or city in this State, and to fix the duties and liabilities of such corporation."

Chapter 94, as it originally stood prior to the amendments, was Act No. 148, Laws of 1855, and, as originally passed, provided for the incorporation of train railway companies. In 1861, the Legislature, by Act No. 14 of that session, so amended the chapter that it provided for the organization of companies under the act to construct and operate railways in and through the streets of any town or city within the State. The act was again amended in 1867 by adding three new sections, to stand as sections 38, 39, and 40. Act No. 188, Laws of 1867. By section 40 it was provided that—

"The cars on the street railway of any company organized under this act may be operated by steam, or by any

power other than animal power, whenever the municipal authorities of the city where such railway is situated shall authorize the same."

The question of the incorporation of street railways under this act came before this Court in *Taylor v. Railway Co.*, 80 Mich. 79, and in *Detroit City Ry. v. Mills*, 85 Id. 634. In the last named case the constitutionality of this chapter and the several amendments was questioned, and the act upheld. We shall not, therefore, discuss the constitutional questions raised as to the act, or the proper and legal organization of the defendant company. If the defendant company is not legally and properly organized under the act, or if the company is attempting to exercise corporate franchises not conferred by the act, it is a matter between the defendant company and the State. The mere usurpation of corporate authority does not confer upon an individual the right to bring suit to restrain an unlawful exercise of authority. If the State chooses to waive it, or permit the action, no others can complain, so long as personal or property rights of the individual are not invaded or affected.

The two principal questions raised by complainants' counsel are:

1. That the use of steam as a motive power is an additional burden or servitude upon their lands.

2. That the mode or manner of construction of the road-bed constructed by the defendant company is also an additional burden or servitude upon their lands.

The testimony shows that the motor used is what is known as "Porter's Noiseless Motor;" that it is operated by steam, and inclosed like an ordinary street-car, and about the same size, and makes less noise than an ordinary electric street-car with overhead wires; that it is so arranged that the steam makes a continuous circula-

tion, making no noise by emission of steam, and that the smoke is consumed.

It was held in *Detroit City Ry. v. Mills*, 85 Mich. 634, that an ordinary street railway is not an additional burden or servitude where the fee of the street is in the abutting owner, and there is almost a *consensus* of judicial opinion in this direction. *People v. Kerr*, 27 N. Y. 188; *Clinton v. Railroad Co.*, 24 Iowa, 455; *Railroad Co. v. O'Daily*, 13 Ind. 353; Dill. Mun. Corp. § 723 (574).

It was also held in that case by this Court that the use of electricity as a motive power did not create an additional servitude or burden upon the lands of the abutting owners. The manner in which the road of the defendant company is to be operated by the use of this steam motor, as it is, is no more of a burden or servitude upon the lands of the abutting owners than an electric car with its overhead wires. It is no more obstruction to the street, and no more of an object calculated to frighten horses passing and repassing upon the highway. Section 40 of the act, above quoted, expressly provides for the use of steam as a motive power upon street railways operated in cities, whenever the municipal authorities authorize it. In *Briggs v. Railroad Co.*, 79 Me. 363 (10 Atl. Rep. 47), the use of steam as a motive power upon street railways was expressly recognized. We think the complainants are not entitled to the relief asked for by their bill by reason of the use of steam as a motive power in the manner in which it is shown the defendant proposes to use it.

It appears that before the defendant company was organized a company known as the "Ann Arbor, Ypsilanti & Detroit Street Railway Company" had procured from the township board of the township of Ann Arbor the right and privilege to construct, maintain, and oper-

87 MICH.—24.

ate a street railway over this highway, to the rights of
which company the defendant claims to have succeeded,
and also claims the right to construct and operate this
street railway by reason of permission, granted to it in
writing by the supervisor and commissioner of highways
of said township, to locate, establish, construct, and
maintain its road over this highway, and to use thereon
animal, motor, or electric power.    Some question is
raised by complainants' solicitors in this record as to the
authority thus granted.    Without entering upon that
question at length, it is sufficient to say that we are
satisfied that there was proper authorization by the town-
ship to construct, maintain, and operate this road by the
defendant, and, unless the complainants are in some
manner affected in their private and property rights, the
defendant cannot be interfered with by them in the
operation of its road.

The second question raises the important point in this
case, and that is the manner or mode in which the
defendant's road is constructed in and along the highway.
A street railway, the rails of which are laid to conform
to the grade and surface of the street, and which is
otherwise so constructed that the public are not excluded
from the use of any part of the street as a public way,
carrying passengers, stopping at street crossings to receive
and discharge them, is a street railway, whether it be
operated by horses or electric power, or by steam-motor,
such as is shown to be used by the defendant in this
case.    The testimony shows, however, that, since issue
was joined in this case, the defendant company has com-
pleted the construction of its road, which had been
mostly completed at the time the bill was filed; that the
road, as constructed, runs along upon the highway within
two or three feet of the road fence upon complainants'
land; that the road-bed does not conform to the grade

of the street, nor pass over and along the surface of the ground next to the fence, but that the grade for the road-bed is made by cuts and fills. In some places the cuts are two feet in depth, and the fills as great. Ditches are dug along the side of the road-bed on either side. Upon the road-bed so constructed ties are placed to the number of from 2,000 to 2,800 to the mile. Upon these ties is placed a T-rail, such as is ordinarily used in the construction of a railroad for commercial purposes, except that the T-rail is somewhat lighter. The complainants claim that this is a use of their property not warranted by the act under which the company is organized, and a taking of their private property for public uses without compensation; that it depreciates the value of their lands, in that they are unable to pass over from the highway to their lands without crossing this road-bed at great inconvenience; and that they are unable to hitch horses or other animals along the highway fence. The complainants' lands have a frontage on the highway of about 40 rods.

The act under which the defendant is incorporated confers no power upon it to construct, maintain, and operate such a road without compensation to the property-owners abutting thereon, and the township authorities could confer upon the defendant no such power. It is from its mode of construction in all essentials a commercial road, and not an ordinary street railway. It is not constructed as street railways are usually constructed, on a level with the surface of the street, so that vehicles may pass and repass over it. As constructed, it blocks up the highway so far as the complainants' use of it is concerned in going to and from their premises, and is an additional burden upon their lands.

The rule is well established in this State that the dedication of a street to the public does not authorize it

to be used for an ordinary railroad track, and the municipal authorities cannot authorize it to be so used without compensation to the adjacent owners. *G. R. & I. R. R. Co. v. Heisel*, 38 Mich. 62, 47 Id. 393; *Riedinger v. Railroad Co.*, 62 Id. 29. It was said by Mr. Justice COOLEY, in *G. R. & I. R. R. Co. v. Heisel*, *supra:*

"A street railway for local purposes, so far from constituting a new burden, is supposed to be permitted because it constitutes a relief to the street; it is in furtherance of the purpose for which the street is established, and relieves the pressure of local business and local travel, instead of constituting an embarrassment. * * * It is enough that the use of the street for a city railway is a proper use, and therefore a lawful use;", citing *Railroad Co. v. Railroad Co.*, 35 Barb. 364; *Railroad Co. v. Railroad Co.*, 33 Id. 420; *People v. Kerr*, 27 N. Y. 188; *Railroad Co. v. O'Daily*, 12 Ind. 551; *Brown v. Duplessis*, 14 La. Ann. 842; *Elliott v. Railroad Co.*, 32 Conn. 579; *Hobart v. Railroad Co.*, 27 Wis. 194.

Speaking further in that case, the learned Justice said:

"But we cannot say the same in the case of the ordinary railroad. * * * In such a case it cannot be questioned that the laying of the railroad track in the highway without first legally appropriating the land for the purpose, and without making compensation, is a legal wrong to the adjacent owner; the track as to him is wrongfully laid."

In *Riedinger v. Railroad Co.*, 62 Mich. 29, a bill was filed to restrain the defendant company from constructing a railroad over and across Front and Superior streets in the city of Marquette. The bill was dismissed in the court below, and complainants appealed to this Court, where, upon a hearing, a decree was entered for a perpetual injunction against this use of the streets, unless within six months measures should be taken to condemn the complainants' rights in the streets, and compensate them therefor.

Defendant contends, however, that the complainant

Theodore S. Nichols is estopped from making this claim by reason of a release of the right of way over complainants' premises. The writing is not put in evidence, and complainant contends that it was procured by fraudulent representations; that at the time of its execution the defendant company represented to him that it was to build a street railway similar to that in the city of Ann Arbor; and upon this understanding he consented to the construction of the road in front of his premises. We think the complainant borne out by this record in that claim, and that the complainants are not estopped from insisting upon their rights here to have a road—if one is to be built at all by defendant—such as was represented to him would be built; that is, an ordinary street railway, conforming to the grade of the street.

In view of these facts as to the *mode* in which the road is constructed, we are satisfied that the complainants are entitled to the injunction prayed. The decree of the court below will be reversed, and a decree entered in this Court granting a perpetual injunction to the complainants, enjoining and restraining the defendant corporation from maintaining and operating its road in the *manner* in which it is constructed across the complainants' premises.

Complainants will recover the costs of both courts.

GRANT, J., concurred with LONG, J.

MORSE, J. I think this case should be reversed, but I do not think that the law, as yet, has been settled in this State that an electric street railway is not an additional burden to the highway, and I am satisfied that a steam railway is such a burden.

The injunction should be granted as prayed.

McGRATH, J., concurred with MORSE, J.

CHAMPLIN, C. J. I concur in the reversal upon the

ground stated in the opinion of Mr. Justice LONG, but I do not concur in that part of the opinion which states that it is settled law in this State that a street railway, operated by steam or electricity, is not an additional servitude upon a street or highway.