**MUSKOGEE ELECTRIC TRACTION CO. v. DOERING.**

No. 8907—Opinion Filed April 30, 1918.

(172 Pac. 793.)

1. **Railroads — Killing of Stock — Fences— Liability.**

Where a corporation is chartered to and operates and maintains an electric street railway and suburban or interurban line, for the purpose of transporting passengers, mail, and freight, and in pursuance of such power builds and operates a line from without the limits of a municipal corporation to another point without such municipality, for a distance of 5 1-2 miles, through an agri-

cultural section, such line of road being built and operated along private rights of way of said corporation, and not along a public road, such corporation is liable for damages for the killing of stock in the event that such corporation fails to fence and erect cattle guards along said line, without such municipal corporation, as provided by section 1435, Revised Laws of 1910, regardless of the fact that it is not guilty of other negligence than the failure to erect such fence and build such cattle guards.

**2. Same — Statutes — "Railroad."**

A railroad within the meaning of section 1435 is any road laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars to run, and on which a car is operated for the carriage of passengers or freight, without regard to the motive power by which its cars are propelled.

(Syllabus by Collier, C.)

Error from District Court, Muskogee County; Chas. G. Watts, Judge.

Action by Edward E. Doering against the Muskogee Electric Traction Company. From a judgment of the district court, on appeal from a judgment for plaintiff in the justice's court, directing a verdict for plaintiff, defendant excepts and brings error. Affirmed.

B. B. Blakeney and J. H. Maxey, for plaintiff in error.

Wm. A. Killey, for defendant in error.

Opinion by COLLIER, C. This action was originally commenced in a justice court by the defendant in error, the plaintiff below, against the plaintiff in error, the defendant below, to recover damages for the killing of a horse. Hereinafter the parties will be referred to as they appeared in the court below. The case was tried in the justice court, and a judgment for $100 was given in favor of the plaintiff and against the defendant. From this judgment an appeal was prosecuted to and tried in the district court. Upon the conclusion of the evidence the court directed the jury to return a verdict for the plaintiff for the reasonable market value of the horse, as shown by the evidence, at the time it was killed, and the jury returned a verdict for plaintiff for the sum of $85, to which the defendant duly excepted. Timely motion was made for a new trial, which was overruled, excepted to, and error brought to this court.

It was admitted in evidence that the defendant is a corporation, and the articles of incorporation of the defendant were introduced in evidence, and showed the nature of defendant's business to be as follows:

"The general nature of the business to be transacted by this corporation is to construct, own, acquire, operate and maintain an electric street railway, and suburban and interurban lines for the purpose of transporting passengers, mails and freight and to acquire right of way, station, and terminal grounds for the same by condemnation or purchase, to buy and sell real estate, to manufacture or produce electricity for furnishing light, heat and power and to sell and furnish the same to customers, to prospect for and produce natural gas and to sell and furnish the same to consumers for heating and lighting."

The uncontradicted evidence is that the defendant constructed and operated its lines in the city of Muskogee, and a line of road from Muskogee, beyond its corporate limits, to Hyde Park, a distance of 5 1-2 miles; that its road from without the corporation of Muskogee did not travel along any public road; that the lines were equipped with the usual electrical overhead equipment and cars were propelled thereon by means of electricity in the usual way; that five or six years prior to the accident, the defendant had permitted the Missouri, Oklahoma & Gulf Railway Company to haul a few cars of freight over this line with a steam engine, but the defendant owned no steam railway equipment and operated none; that the defendant had also moved, at rare intervals, carloads of freight for certain manufacturing establishments located at Hyde Park, but at the time of the accident these manufacturing establishments were closed down, and no carload lots were being moved; that the defendant also carried small packages of freight on its passenger cars for any one who desired to have them transported; that its principal business over this line was that of carrying passengers; that some years prior to the accident the defendant had erected a fence along the south line of plaintiff's property, but the fence had gotten in bad repair and would not have constituted a lawful fence within the meaning of the general railroad laws of the state; that on February 6, 1916, the plaintiff left his horses in the barn lot on his farm, and left the gate of the barn open; that the plaintiff knew that the horses could go out on the defendant's right of way; that at one particular place between his stalk field and defendant's right of way, the fence was not over a foot high; that plaintiff had known that this condition of the fence had existed for a long time: that the horses left the barn lot and went into the stalk field, and some time during the night strayed upon the defendant's right of way; that some time during the night, while a car was coming from Hyde Park to Muskogee, a horse belonging to the plaintiff jumped on the tracks in front of the car, not far from plaintiff's farm, and was struck and killed. It was also shown by the evi-

dence that the value of the horse was from $75 to $100. The plaintiff announced in open court that he did not claim any negligence on the part of the defendant except the failure to maintain a fence and cattle guards, required by the general railway law. It was stipulated and agreed that plaintiff's farm was in Harris township, Muskogee county, and not within the corporate limits of the city of Muskogee.

There are very many assignments of error; but, in view of the assertion in plaintiff's brief, there is only one question involved in the case, and that is, Is an electric street or suburban railway, such as the defendant in this case, within the meaning and purview of the general railroad laws of the state, requiring railroad companies to fence their rights of way? It is further stated in plaintiff's brief:

"That if the defendant is a railway company within the meaning of the statutes, the plaintiff was entitled to recover, and the court should have directed a verdict in his favor. If this defendant is not a railway within the meaning of such statute and not required by that statute to fence its right of way and maintain cattle guards, then the defendant was entitled to a judgment."

It is therefore unnecessary to consider any question involved in this appeal, other than whether or not the defendant, under the statutes of this state, was required to fence its line outside of the corporation of Muskogee, and to erect cattle guards. Section 1435, Revised Laws 1910, is as follows:

"It shall be the duty of every person or corporation owning or operating any railroad in the state of Oklahoma to fence its road, except at public highways and station grounds, with a good and lawful fence."

Section 1438, Revised Laws 1910, is as follows:

"Whenever any railroad corporation or the lessee, person, company or corporation operating any railroad, shall neglect to build and maintain such lawful fence, such railroad corporation, lessee, person, company, or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

We are of the opinion, under the facts in this case, that to avoid liability for killing stock it was the duty of the defendant to fence its road from without the corporation of Muskogee to Hyde Park; that it was a railroad within the meaning of said section; and that having failed to do so, it was liable to the plaintiff for damages for the killing of the horse, without other negligence on the part of the defendant. And there being no conflict in the testimony, the court did not err in instructing the jury to find for the plaintiff for such an amount as might be shown by the evidence was the market value of the horse. The question involved in this appeal has not been directly decided by this court, and we are not unmindful that the authorities are in conflict, but we think that the rule announced by us is fully sustained by the weight of authority. Whether or not it is a railroad cannot be determined by the power with which its cars are operated, and if otherwise coming within the definition of a railroad, it is entirely immaterial whether its cars be operated by steam or electricity, or any other power. In 33 Cyc. p. 33A, a railroad is defined as a road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars, drawn by steam or other motive power, to run upon. In Massachusetts Loan & Trust Co. et al. v. Hamilton, 88 Fed. 588, 32 C. C. A. 46, it is held:

"The word 'railroad' has no such fixed definition as to enable a court to determine whether, by its mere use in a statute, it applies to street railways or not. It may be used in its broad sense, which includes a street railroad, and any other kind of road on which rails of iron are laid for the wheels of cars to run upon, whether propelled by steam, electricity, horse, or other power, or it may be used in its technical sense, which does not apply to street railroads. As a general rule, statutes are presumed to use words in their popular sense; but the safest rule of construction is to take the entire provisions of the statute, and thereby ascertain, if possible, what the Legislature intended. The meaning must depend upon the context, and be ascertained from the occasion and necessity of the law, the mischief felt, and the object and remedy in view."

It is very clear that the law under review imposes upon a railroad company, whether its cars are propelled by steam or electricity, and regardless of the fact that its principal business may be the operation of street cars within a municipality, the duty to fence and erect cattle guards on an interurban line operated by it without a municipality, in order to avoid liability for killing stock, where stock is killed without other negligence than said corporation's failure to comply with said section 1435, Revised Laws 1910. In Riggs v. St. Francois County Railway Co., 120 Mo. App. 335, 96 S. W. 707, it is held:

"In determining whether the term 'railroad corporation,' as used in section 1105, Revised Statutes of 1899, applies to a street railway in a given instance, the court must consider the context and purpose of the statute, the character of mischief sought to be prevented by it, and the use to which the railroad is put. A street railway organized under article 3, c. 12, of the Revised Stat-

utes of 1899, with authority to operate its railroad by 'animal, cable, electric or other motive power' to 'transport passengers, express and mails' and running the greater portion of its length through an agricultural country, is a 'railroad corporation' within the meaning of section 1165, Revised Statutes of 1899, and liable for double damages for animals killed by its failure to fence its track where it runs through inclosed or cultivated fields or uninclosed lands."

In the case of Hannah v. Met. St. Ry. Co., 81 Mo. App. 78, in defining a "street railway" the court says:

"A street railway has been variously defined. As the name indicates, the primary meaning of street railway, or street railroad, is one constructed and operated on and along the streets of a city or town for the carriage of persons from one point to another in such city or town or to and from its suburbs. It is peculiarly * * * for the accommodation of people in cities and towns; its tracks are ordinarily laid to conform to street grades; its cars run at short intervals, stopping at street crossings to take on and discharge passengers, and its business is confined to the carriage of passengers and not freight. Booth on Str. Rys. s 1; Elliott on Roads and Streets, p. 557; Williams v. Railway (C. C.) 41 Fed. 556; Funk v. Railway, 61 Minn. 435 [63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. Rep. 608]. The road in question is quite a different thing from that just described. It is not strictly local in its character; it is not used to carry passengers from corner to corner, or from one section or portion of the city to another, or to transport persons from 'down town' to and from its suburbs; it pays little attention to streets or roads, but takes its course through the country just as any other railroad. * * * That defendant has changed the motive power from steam to electricity can make no difference; it still remains a railroad within the meaning of the act. Booth on St. Rys. sec. 1, and notes. The law was intended as a protection to stock and to human life. The change from steam power to electricity may lessen the chances for accident, but, as the present case shows, has not rendered the operation of the road entirely safe. The danger still remains, though possibly in a less degree."

In Simoneau v. Pacific Traction Co., 159 Cal. 494, 115 Pac. 320, the court cites Century Dictionary; Standard Dictionary; Bd. of R. R. Com. v. Market St. Ry., 132 Cal. 683, 64 Pac. 1065; Bloxham v. Consumers', etc., Co., 36 Fla. 539, 18 South. 444, 29 L. R. A. 507, 51 Am. St. Rep. 44; Hannah v. Met. St. Ry. Co., 81 Mo. App. 78, and many other authorities, and says:

"Whether or not a railway is a street railway does not depend on the motive power. Nichols v. A. A. & Y. S. R. Co., 87 Mich. 361, 49 N. W. 538 [16 L. R. A. 371]; Mc-

Nab v. United Ry., etc., Co., 94 Md. 719, 51 Atl. 420 [421]. Various features are to be considered. Among these are the location and method of construction of the track, the manner of the operation of the cars, and the general purpose of the enterprise."

Finding no error in the record, this case is affirmed.

By the Court: It is so ordered.